# AVIL PRINTING COMPANY, Appellant, v. FRED P. KAISER PUBLISHING COMPANY, Respondent.

### St. Louis Court of Appeals, October 17, 1905.

1. **EVIDENCE: Parol Evidence to Vary Written Contract.** Parol evidence is inadmissible to contradict or vary the terms of a written contract, but where there is a verbal contract and only a part of it is reduced to writing, parol evidence is admissible to prove the parts not written.

2. ———: ———. Where a book dealer employed a binding company to bind a quantity of the former's books, by a contract which provided that the binding company would carry a blanket insurance policy to protect its customers from loss by fire, but contained a suggestion that the book dealer should take out other insurance, it was competent to prove by parol testimony that the binding company agreed, in addition, to protect the book dealer's property by insurance and that the item of insurance entered into the estimate of compensation paid by the book dealer.

3. **PLEADING: Implied Contract: Variance.** In an action by a bookbinder for labor performed and material furnished in printing and binding books, the defendant filed a counterclaim alleging that its books were destroyed by fire while in the plaintiff's possession, that the plaintiff was carrying on behalf of the defendant a blanket fire insurance policy to protect the defendant against loss, that plaintiff negligently failed to prove up or make claim for any loss caused by the destruction of the defendant's property whereby the defendant was damaged. The proof showed that the plaintiff had made an express agreement with the defendant to protect the defendant by insurance. *Held*, the counterclaim was upon an implied contract to protect plaintiff's property, which the defendant breached by negligently failing to perform it, and the plaintiff's liability depended upon its breach of the contract and not upon whether the breach was negligent or wilful, and there was no variance between the pleading and the proof.

Appeal from St. Louis City Circuit Court.—*Hon. Warwick Hough,* Judge.

AFFIRMED.

. *Lee W. Grant* and *P. B. Kennedy* for appellant.

*Charles W. Holtcamp* and *Hy. A. Baker* for respondent.

BLAND, P. J.—The petition is in two counts; the first is for work and labor performed and material furnished in printing and binding certain books for defendant; the second is for labor in cleaning and shipping to defendant certain plates. The plaintiff recovered judgment on both counts, from which no appeal was taken. The appeal is by plaintiff from a recovery by defendant of fifteen hundred dollars on its counterclaim. The substantive part of the counterclaim is as follows:

"That on or about the first day of November, 1903, defendant was the owner of certain property, to-wit, 9,379 volumes of a certain book, entitled 'Crowned Masterpieces of Literature;' that all of said volumes were at the said time in plaintiff's possession, in the city of Philadelphia, State of Pennsylvania, for defendant, for the purpose of being bound whenever defendant should order plaintiff so to do, at prices agreed upon, according to the nature of the binding ordered, as per the contract herewith filed, marked defendant's Exhibit 'A' and made a part hereof, and being a part of the same agreement, under and by virtue of which plaintiff performed the labor and furnished the materials as alleged in the first count of its petition herein; that none of said volumes had at any time been bound by plaintiff; that at said time, plaintiff had taken out and was carrying on said volumes, in behalf of defendant, what is known as Blanket Fire Insurance, to protect, secure and indemnify defendant herein against any loss of its said property by fire, which action of plaintiff's was relied on and adopted by defendant; that, on or about the said first day of November, 1903, plain-

tiff's premises, Nos. 3941-43-45 Market street, in the city
of Philadelphia, State of Pennsylvania, were visited by
fire, which said fire destroyed said property of defend-
ant as above described; that the reasonable value of said
volumes was more than three thousand dollars; that sub-
sequent to said fire, as aforesaid, in the adjustment of
the losses sustained by plaintiff by reason of said fire,
which adjustment took place on or about said seventh
day of December, 1903, plaintiff negligently failed to
prove up any loss or to make any claims for the de-
struction of defendant's property, insured as aforesaid,
although the total proven loss caused by said fire was
less than the total amount of insurance thereon by
over $50,000 and although plaintiff received full in-
demnity for all proven losses; that by reason of plain-
tiff's negligence defendant was damaged in the sum of
$3,000; that plaintiff has not paid said three thousand
dollars, or any part thereof to defendant; and that plain-
tiff has refused and still refuses to pay the same to
defendant."

Ferd. P. Kaiser, president of defendant company,
testified that in October, 1902, he had an interview with
G. T. Rowland, vice-president and manager of the plain-
tiff company, about the printing and publishing by
plaintiff of nine thousand three hundred and seventy-
nine volumes of a work entitled, "Crowned Masterpieces
of Literature." The interview resulted in the making
of a contract, a portion of which was reduced to writing
in the form of a letter, which reads as follows:

"Philadelphia, Pa., Oct. 23, 1902.
"*Mr. F. P. Kaiser,*
"President F. P. Kaiser Publishing Company,
"St. Louis, Mo.

"Dear Sir: We beg to quote herewith prices for
the manufacture of your essays, to be printed and bound

in ten volumes, in editions of 2,500 sets at a time, as follows:

> Press Work, ............... 2¾ cents per volume.
> Binding in full cloth, like sample volume you submitted to us, Gold Top ... 18 cents per volume.
> In half leather, Brown Smooth Skiver, with leather backs and corners, plain end sheets, marble paper sides, like sample volume submitted to you, gold top, ... 30 cents per volume.

"If you should have marble End Sheets, 2 cents per volume additional, and with rolled gold lines on sides and corners, 2½ cents additional.

"The above prices include boxing and shipping in any quantites your orders may call for. Terms of payment, three per cent for cash, or four months note, dated from the first of the month for all shipments made the month previous.

"There would be no storage charged you on your sheet stock and plates, the latter of which will be stored in our fire-proof vault. While we carry a blanket insurance policy, which would protect our customers from loss by fire in the event that out loss was not too severe, we would advise you, as we have on previous occasions, to be on the safe side, and carry a moderate amount of insurance on your property. We think it would be unnecessary to carry but very little, if any, on your plates, as they will be stored in our vault, which seems about as fire-proof as it is posible to make one.

"We will further agree to print and bind another edition of your essays at the above-named prices, provided the order is placed within one year from date.

> "Yours very respectfully,
> "AVIL PRINTING COMPANY,
> "G. T. ROWLAND.

"Accepted: F. P. Kaiser.

"All press work to be charged as soon as completed. All binding to be charged when shipped.

"AVIL PRINTING COMPANY,

"Per G. T. ROWLAND."

In respect to the insurance portion of the contract, witness said: "In talking with Rowland, I told him that I would not move my plates from Akron at the Werner Company's place, unless plaintiff would give me the same terms, and would promise that they would insure our plates and our property there, during the time it was in their charge, as the Werner Company had always done. He agreed to carry blanket insurance to cover my property, and on the strength of that and the other terms and prices, I removed my plates and property into their hands. Mr. Rowland said that the price would include insurance and charges of every kind."

On the same subject, Mr. Rowland testified, by deposition as follows:

"In October, 1902, I was vice-president and manager of the Avil Printing Company, and until April, 1903 (witness identifies Exhibit 'A,' already read in evidence and his signature thereto). Exhibit 'A' is an agreement between the Avil Printing Company and the Ferd. P. Kaiser Publishing Company for the manufacture of a certain set of books entitled 'Crowned Masterpieces of Literature.' Plaintiff entered upon the performance of this contract. It is a part of the contract, the balance of which was verbal through some various conversations with the president of the Ferd. P. Kaiser Publishing Company. I had conversation with Mr. Kaiser both before and after the date of the written agreement.

Q. Mention some one part of the contract agreed upon between you and Mr. Kaiser orally that was not fully covered by the written contract.

127 App—10

A.    The matter of insurance on the Ferd. P. Kaiser Publishing Company's property was discussed by Mr. Ferd. P. Kaiser, president of the Ferd. P. Kaiser Publishing Company, and myself. I cannot remember the date or where. I would state, however, that in soliciting this work, he informed me that the Werner Company of Akron, Ohio, carried blanket insurance that covered his property then in their possession and he wanted to know if such an arrangement existed with the Avil Printing Company. I later talked with Mr. Avil, who informed me that the policies of the Avil Printing Company were similar to those described as being carried by the Werner Company, and we so notified Mr. Kaiser, and in exhibit 'A' we only advised Mr. Kaiser to be on the safe side and carry some insurance on his property for the reason set forth in the agreement I executed with the Avil Printing Company, marked exhibit 'A.' "

The evidence is that on the first day of November, 1903, plaintiff company had nine thousand three hundred and seventy-nine unbound volumes of defendant's book in its possession, for the printing of which it had been paid by defendant company. On the last-named date, plaintiff's premises, in which it had defendant's unbound books stored, were destroyed by fire and all the books were burned. On being notified of the loss immediately after the fire, defendant company sent plaintiff company an estimate of its loss and demanded the insurance money plaintiff agreed to carry on the unbound books. The value of defendant's property destroyed by the fire is shown to be one thousand four hundred and twenty-five dollars. At the time of the fire plaintiff carried a total of $279,941.80 blanket insurance on its stock. For the losses caused by the fire, plaintiff was paid by the insurance companies, as follows: On loss of stock, $51,135; on loss and damage to machinery, $16,876, leaving a balance of $53,941.80 insurance carried by plaintiff over and above the losses

paid. Plaintiff neither proved up or demanded the payment of any insurance on the loss of defendant's books. The blanket or rider clause in each of the insurance policies held by plaintiff at the time of the fire reads as follows: "All the property of every description (whether required to be specifically insured by the condition of the policy or not) appertaining to or used by, the assured in conducting their business therein, owned, held in trust or on consignment, or sold and not removed or leased, or belonging to other, for which they are liable, including value of labor or property of others, whether liable for the same or not." No contention is made that defendant's books might not have been protected by this clause in the policies of insurance but the contention is that the plaintiff company did not insure or intend to insure them and did not agree with the defendant that it would insure them. To maintain this contention, plaintiff claimed, on the trial, that all the terms of the contract between the parties are embraced in the written instrument of October 23, 1902, and for this reason objected to the introduction of any oral evidence to vary or add to the terms of the contract as contained in the writing. This objection was overruled by the court and this ruling is assigned as error.

1. The general rule in regard to the admission of oral testimony to vary the terms of a written contract is thus expressed by Greenleaf (vol. 1) (16 Ed.), sec. 275:

"When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous *colloquium* between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as

it would tend in many instances to substitute a new and different contract for the one which we really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument.' "

In Boggs v. Pacific Steam Laundry Co., 171 Mo. l. c. 278, 70 S. W. 818, the rule, as stated above by Greenleaf, is approvingly cited, and a number of cases in support of the ruling are reviewed in an able opinion by MARSHALL, J. But the ruling does not apply where the verbal contract was entire and only a part was reduced to writing.

It was held in Brown v. Bowen, 90 Mo. 184, 2 S. W. 398, that a receipt given for the negotiation of a note (payment of proceeds to be to plaintiff) was not conclusive, but that oral testimony, in respect to the contract, not inconsistent with the receipt, was admissible. Another case where the rule was held not applicable is Roe v. Bank of Versailles, 167 Mo. 406, 67 S. W. 303. Roe had executed his note to the defendant bank for seven hundred and fifty dollars due in thirty days. At the same time he made a verbal agreement with the bank that the proceeds of the sale of a certain lot of hogs to be made should be deposited to Roe's credit in the bank and that the bank should credit such proceeds upon the note whether it was due or not. The sale was made before the maturity of the note and the proceeds deposited in the bank and credited on the note. Held, that proof of the oral agreement was admissible as the agreement was a distinct, collateral, contemporaneous agreement, independent of and not varying the written agreement, though relating to the same subject-matter. Brown v. Bowen, supra, is approved in Black River Lumber Company v. Warner, 93 Mo. 374, 6 S. W. 210,

and in Greening v. Steele, 122 Mo. 1. c. 294, 26 S. W. 971.

It seems to us that the case in hand is one where the contract is verbal and entire but only a part of it was reduced to writing. Both Kaiser and Rowland testified that it was specifically agreed that plaintiff company would protect the defendant company from loss by fire by the blanket insurance it was then carrying, and Rowland testified that the expense of this insurance was an item that entered into an estimate of the compensation defendant was to pay plaintiff for printing and binding the books. The writing does not contain a specific agreement that plaintiff's property would be protected by insurance, but we think the clause in the contract which refers to insurance shows that the matter had been under discussion between Rowland and Kaiser and is corroborative of defendant's evidence to the effect that it was agreed its property should be protected by the blanket insurance. Kaiser testified that the oral contract was first made and the letter (written contract) was handed to him by Rowland a day or two afterwards. The letter shows on its face that it is a mere memorandum of the contract and that all of the terms of the contract are not specifically and definitely set forth, and we conclude that the oral evidence was properly admitted.

2. The counterclaim alleged that plaintiff negligently failed to prove up any loss or to make any claim for insurance on its property destroyed by fire. Defendant's proof is that an express agreement was made that the plaintiff would protect the defendant by insurance from loss of its property by fire. On this allegation of the counterclaim and the proof, the point is made by plaintiff that defendant stated or attempted to state a cause of action bottomed on negligence in the performance of an implied duty while it was permitted to recover for breach of an express contract, or to recover

on a cause of action not stated in the counterclaim. If we read the counterclaim in the light of the evidence, we think it states a cause of action upon an implied contract. It is stated, in substance, that plaintiff promised, for a consideration, to protect defendant's property from loss by fire through the blanket insurance it carried on its stock, etc., and that defendant, relying on this promise, placed its work in plaintiff's hands to be printed and bound and that plaintiff breached this implied contract by negligently failing to do what it promised to do. Whether the breach of the implied contract was negligent or willful is immaterial; the liability of plaintiff depends upon the breach, irrespective of whether the breach was the result of action or nonaction. Plaintiff cites Cole v. Armour, 154 Mo. 1. c. 350, 55 S. W. 476, and Huston v. Tyler, 140 Mo. 1. c. 264, 36 S. W. 654, 41 S. W. 795, as holding that a plaintiff cannot sue upon an express contract and recover upon an implied contract. This is unquestionably a well-settled rule of legal procedure, but the converse of the rule, i. e., that a plaintiff may sue upon an implied contract and cannot by showing there was an express contract, is not true. [Mansur v. Potts, 80 Mo. 651; Plummer v. Trost, 81 Mo. 1. c. 430; Williams v. Railway, 112 Mo. 1. c. 491, 20 S. W. 631; Moore v. Gaus & Sons Mfg. Co., 113 Mo. 1. c. 107, 20 S. W. 975; Squire v. Ferd Heim Brewing Co., 100 Mo. App. 1. c. 421.] The recovery in such cases will, of course, be confined to the limits of the express contract. The fact that proof of the terms of the alleged implied contract comes in the form of a writing instead of being oral does not change the cause of action. It only unsets the expectation of the opposite party that the proof will be oral. We do not think, under the authorities, supra, the defendant, by its counterclaim, sued upon one cause of action and was permitted to recover upon another and different cause of action.

No reversible error appearing, the judgment is affirmed. All concur.