## CHARLES E. BOWERS, Appellant, v. LEO T. BELL, Respondent.

**St. Louis Court of Appeals, February 8, 1916.**

1. **CONTRACTS: Evidence: Varying Contract: Parol Evidence Rule.**    The general rule is, that where parties have put their contract in writing, the law presumes, in the absence of fraud, accident or mistake, that the writing embodies the agreement between them, and extrinsic evidence is not admissible to vary

or contradict the terms thereof; but there is perhaps no rule of law that is more flexible or subject to a greater number of exceptions than this, and in practice it must be applied with great care and caution, otherwise grave injustice may result.

2. ———: ———: ———: ———: **Exceptions.** Among the numerous exceptions to the rule above announced are these: That even where a written contract exists between the parties touching the same general subject-matter, extrinsic evidence may nevertheless be admitted, in proof of a prior or contemporaneous collateral parol agreement between them, separate and distinct from that contained in the writing itself, and not inherently in conflict with the latter; also, that where only a part of the real understanding and agreement is reduced to .writing, parol evidence is admissible to establish the remainder.

3. **CONTRACTS: Options: Necessity of Consideration.** An option contract is not binding on the obligor where no consideration passes to him for executing it.

4. **TRIAL PRACTICE: Demurrer to Evidence.** A demurrer to the evidence admits the truth of plaintiff's testimony.

5. **.CONTRACTS: Evidence: Admissibility of Parol Evidence of Prior Agreement: Facts Stated.** In an action by a real estate broker to recover a commission for effecting the sale of real estate, it was shown that defendant agreed to pay plaintiff, as a commission for selling defendant's land, all over and above $2400 that he might succeed in realizing from a sale thereof; that plaintiff, having interested a client in the land, procured from defendant an option contract, whereby defendant gave plaintiff, or his assigns, the privilege of buying the land within a certain period for $3200; that it was understood that the option was taken by plaintiff for the purpose of turning the same over to his customer, and that defendant was to receive $2400, while the remaining $800, to be represented by a note secured by a deed of trust, was to go to plaintiff for his services; that a conveyance was afterwards made to plaintiff's customer, and defendant received the note and deed of trust for $800, but refused to deliver the note to plaintiff, and subsequently caused the deed of trust to be released. *Held*, that a demurrer to the evidence should not have been sustained, on the theory that the option agreement constituted the contract between the parties and that the extrinsic evidence as to plaintiff's employment as a broker was inadmissible because it tended to vary or contradict the written agreement, for the reason that parol evidence relating to the parol contract of employment was admissible, on the theory that such agreement was a prior agreement, separate and distinct from that contained in the written contract and not inherently in conflict with the later, or on the theory that only a part of the real understanding and agreement was reduced to writing.

Appeal from Ralls Circuit Court.—*Hon. William T. Ragland,* Judge.

REVERSED AND REMANDED (*with directions*).

*B. F. Glahn, H. Clay Heather* and *Charles T. Hays* for appellant.

(1) The rule is well settled that proof is admissible of any collateral, parol agreement or independent fact, which does not interfere with the terms of the written contract, though it may relate to the same subject-matter; and whether such collateral agreement was made or independent fact occurred contemporaneously with or as preliminary to the main contract in writing, is quite immaterial. Owsley v. Jackson, 163 Mo. App. 11; Boggs v. Laundry Co., 171 Mo. 290; Greening v. Steele, 122 Mo. 294; Brown v. Brown, 90 Mo. 189, 190; Finks v. Hathaway, 64 Mo. App. 188; Printing Co. v. Pub. Co. 127, Mo. App. 148; Huckabee v. Shepherd, 75 Ala. 342; 17 Cyc. 713; 17 L. R. A. 272, 273, 274; 6 L. R. A. 37. (2) The rule against admitting parol testimony should not be invoked as a shield for fraud or be applied so as to work injustice. Owsley v. Jackson, 163 Mo. App. 11; 17 L. R. A. 272; 2 Pomeroy's Eq. Jur., 324. (3) The general rule admitting parol evidence of a collateral verbal agreement is especially applicable in cases where such agreement operates as one of the conditions or as an inducement to the complaining party to enter into the written contract. Owsley v. Jackson, 163 Mo. App. 11; Hotel v. Levermore, etc., Co., 154 S. W. 952; Michels v. Olmstead, 14 Fed. 219; Ferguson v. Rafferty, 6 L. R. A. 33. (4) A separate parol agreement as to matters not inconsistent with the written agreement, and on which it is silent, may be shown, especially where the written instrument was not intended to be a complete statement of the whole transaction. Owsley v. Jackson,

163 Mo. App. 11; Huckabee v. Shepherd, 75 Ala. 342; Gault v. Hunt, 183 Ill. App. 77; Wehnes v. Roberts, 139 N. W. 212; Kurtz v. Payne Inv. Co., 135 N. W. 1075; 6 L. R. A. 37.

*Eby & Hulse* for respondent.

(1) The plaintiff, if he recover at all, must recover under the contract he pleads in the petition. Parties cannot come into court, pleading an express contract, and claiming a breach thereof, and then recover upon proof of a different cause of action. There was no evidence that the defendant ever employed plaintiff, as a broker, to procure a purchaser for defendant's lands. Laclede Construction Co. v. Tudor Iron Works, 169 Mo. 137. (2) If the language of the contract appears plain and capable of legal construction, nothing dubious appearing on the face of the instrument, the effect to be given to it must be determined by its terms, and parol evidence cannot be held to give it a different construction from that imported by its terms. Koehring v. Muemminghoff, 61 Mo. 403; Aurora Water Co. v. City of Aurora, 120 Mo. 540; Bethany Savings Bank v. Cushman, 66 Mo. App. 102; Biggs v. Steam Laundry Co., 86 Mo. App. 616; Harrington v. Brockman Commission Co., 107 Mo. App. 418; Minn. Threshing Mfg. Co. v. Grant City and Lumber Co., 81 Mo. App. 255. Parol evidence cannot be allowed to contradict the provisions of a written instrument, even though such instrument contains only a part of the entire contract. Dexter v. MacDonald, 196 Mo. 373.

ALLEN, J.—This is an action by a real estate broker to recover compensation for his services in effecting a sale of certain land belonging to the defendant. The amended petition upon which the case went to trial is in two counts. The first count declares upon

an express agreement between plaintiff and defendant whereby plaintiff was to receive any excess over and above $2,400 for which he might sell defendant's land, averring that plaintiff sold the land for $3200 and thereby became entitled to the sum of $800. The second count of the petition seeks to recover the reasonable value of plaintiff's services in selling the land, alleged to be $800. The answer, aside from certain admissions which need not be noticed, is a general denial.

The cause was tried before the court and a jury, and at the close of plaintiff's evidence, the defendant moved that plaintiff be required to elect upon which of the two counts of his petition he would stand. This motion was sustained, and the plaintiff, in compliance therewith, elected to stand upon the first count. Defendant then offered an instruction in the nature of a demurrer to the evidence, which instruction the court gave. Thereupon the plaintiff took an involuntary nonsuit with leave to move to set the same aside. Thereafter the court overruled plaintiff's motion to set aside the nonsuit, and plaintiff appealed.

It appears that in 1911 one Clayton Mark, of Chicago, Illinois, through an agent named Perkins, was engaged in acquiring a large acreage of bottom or low lands in Marion county, Missouri, with a view of organizing a drainage district under the laws of this State. The defendant owned one hundred and sixty acres of land of this character in said county, which lay within the limits of the contemplated drainage district. Plaintiff, having sold certain other lands to Mark, began correspondence with the defendant regarding the sale of defendant's lands. Plaintiff's evidence goes to show that defendant agreed that plaintiff could have, as commission, whatever he might realize over and above $15 per acre, or a total of $2400. On October 29, 1911, in reply to a communication from plaintiff, defendant wrote plaintiff a letter in which,

among other things, he said: "Now you can investigate this farm and you will find that I offered you a bargain in the proposition I made you. $15 per acre—$2400; mortgage $1400—$1000." Again on December 4, 1911, in answer to a letter written by plaintiff to him, defendant wrote plaintiff, saying: "I will give you an option for thirty days on the proposition I made you, $2400 mortgage $1400."

Plaintiff testified that on December 12, 1911, he and defendant met at Palmyra, Missouri, by appointment. Plaintiff's testimony, in substance, is that at his request defendant then and there consented to execute a writing giving to plaintiff or his assigns an option to purchase the land at the stated price of $20 per acre, a total of $3200; that it was understood, however, that this option was taken by plaintiff merely for the purpose of turning the same over to Mark or his representative, and that defendant would receive but $15 per acre for his land as originally agreed—that is to say, that defendant would receive $1200 in cash, and the purchaser would assume the mortgage upon the land (which then appears to have been $1200, instead of $1400), the remaining $800 of the purchase price to be represented by a note secured by deed of trust and to go to plaintiff in compensation for his services if such sale were consummated. Pursuant to this agreement, according to plaintiff's evidence, the following instrument was thereupon prepared by plaintiff and signed by the parties, viz:

"REAL ESTATE OPTION. I, L. T. Bell, of Monroe City, for and in consideration of one dollar, do hereby grant to C. E. Bowers, of Quincy, Illinois, his heirs and assigns, the privilege of purchasing on or before the 12th day of January, A. D. 1912, the following described real estate, to-wit:

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"In case of purchase and the above named price paid, I agree to furnish abstract showing good title and to convey said real estate by warranty deed to Edmund T. Perkins, or any person he may direct, reciting in deed such consideration as said Edmund T. Perkins shall name.

"Purchase price to be twelve hundred cash when deed is executed and eight hundred in twelve months, purchaser to assume mortgage for $1200.

"Witness my hand and seal this 12 day of Dec., 1911.

L. T. Bell      (Seal)
C. W. Bowers   (Seal)"

Plaintiff's evidence shows that the sale was not consummated until in March, defendant agreeing to the extension of time for closing the sale. On February 27, 1913, prior to the consummation of the sale, defendant wrote plaintiff in response to a letter from the latter regarding a certain proposal of the purchaser relating to discounting the purchase price, saying: "I would not want to have you discount *the deed of trust you are to let me have.*" In reply to this defendant wrote declining the proposition of discount, and, among other things, saying: "Now that sounds strange to me, your interest to be protected. . . . I have made out one deed and one deed of trust . . . and afterwards was ordered to make out deed to another party and did so and also another deed of trust for you."

It appears that defendant had, in fact, executed a deed to Perkins, Mark's agent, but that later, upon request, he executed a deed directly to Mark. A new deed of trust to secure plaintiff's $800 was also executed in lieu of the one originally prepared. The latter does not appear in the record, but that finally executed ran from Clayton Mark and wife to one Longmire as

trustee for Leo T. Bell, the defendant, to secure a note for $800 due one year after date.

Plaintiff's evidence shows that the sale was thus finally consummated; that defendant received $1200 in cash, and also the note and deed of trust last above mentioned, the purchaser, Mark, assuming the payment of the aforesaid mortgage on the property. The deed of trust securing the note of $800 was at once recorded. Plaintiff testified that some time in March he met defendant in Monroe City, Missouri; that defendant then had with him this deed of trust, which had been returned to him from the recorder's office, and that he gave it to plaintiff saying that he did not have the note with him but would mail the same to plaintiff as soon as he returned home. Plaintiff further testified that thereafter he repeatedly wrote defendant regarding the note but received no response to his letters; that later he went to defendant's home and requested defendant to deliver the note to him, but that defendant refused to do so, saying that he had changed his mind. It seems that thereafter the defendant, by producing the mortgage note, caused this deed of trust to be released.

It appears that the trial court forced plaintiff to a nonsuit upon the theory that the option agreement hereinabove set out constituted the written contract between the parties covering the subject-matter of the litigation, and that the extrinsic evidence adduced by plaintiff could not be permitted to vary or contradict the terms thereof. The court had permitted the various letters offered and plaintiff's parol testimony to be admitted, but at the close of plaintiff's case the court evidently rejected all of this as being incompetent because of the existence of the written option agreement aforesaid. This view we believe to be unsound, under the facts and circumstances disclosed by this record.

No one will dispute, and it is conceded by appellant, that the general rule, well established, is that where parties have put their contract in writing, then in the absence of fraud, accident or mistake, the law presumes that the writing embodies the agreement between them, and extrinsic evidence is not admissible to vary or contradict the terms thereof. The reason for this ancient principle of law, as a general rule of evidence, is so obvious and has been so often stated as to render it wholly unnecessary for us to do more than refer to the rule itself. But there is perhaps no rule of law more flexible or subject to a greater number of exceptions. In practice it must be applied with much care and caution, otherwise grave injustice may result. Indeed it has been said that its application depends largely upon the particular facts of each case; and that the courts, in their efforts to prevent the rigid application of the rule from working extreme hardship and injustice, have sought from time to time to engraft so many exceptions upon it as to render the great body of case law upon the subject almost in hopeless conflict. While there is in fact much apparent conflict in the authorities, for the most part the facts of the cases wherein the courts have refused to apply the rule will be found to fall within certain well recognized exceptions thereto, many of them as thoroughly established as the rule itself and quite as necessary to the demands of justice.

Among these numerous exceptions is one, firmly established, to the effect that even where a written contract exists between the parties touching the same general subject-matter, extrinsic evidence may nevertheless be admissible in proof of a prior or contemporaneous collateral parol agreement between them, separate and distinct from that contained in the writing itself, and not inherently in conflict with the latter. [See Jones on Evidence (2 Ed.), sec. 439, p. 552; 17

Cyc. 713, et seq; Owsley v. Jackson, 163 Mo. App. l. c. 18, 144 S. W. 154; Boggs v. Laundry Co., 171 Mo. l. c. 290, 70 S. W. 818; Greening v. Steele, 122 Mo. l. c. 294, 26 S. W. 971; Brown v. Bowen, 90 Mo. 184, 2 S. W. 298; Avil Printing Co. v. Publishing Co., 127 Mo. App. 141, 89 S. W. 900; Huckabee v. Shepard, 75 Ala. 342.]

The parol agreement upon which this action is predicated, and for a breach of which a recovery is sought, is one entirely separate and distinct from the so-called option agreement, supra, which came into evidence in plaintiff's case. And when the evidence embraced within this record is fully and properly considered, it does not appear that the contract sought to be enforced, established by plaintiff's parol testimony and the letters admitted in evidence, is in any way contradictory or repugnant to the written option of December 12, 1911. On the contrary it is quite clear, under the evidence adduced, that the two are entirely consistent, and that the signing of the written option, and the consummation of the sale in accordance with the terms thereof, were but steps in the execution or carrying out of the parol agreement between the parties. The option paper on its face shows that the land was to be conveyed to a third party, the stated consideration to be such as Perkins should name. Defendant was to receive $1200 in cash, and a note and deed of trust were to be executed to him for $800. That the note and deed of trust were to be made to him is in no way inconsistent with the alleged agreement by virtue of which he was obligated to deliver the same to plaintiff. And under the circumstances no inconsistency arises from the fact that the sale price, to a third party, was stated in the option paper to be $3200.

And it seems quite clear that but a part of the real understanding and agreement between the parties was reduced to writing, thus bringing the case also within another well-known exception to the general rule re-

ferred to above. [See cases cited, supra.] According to plaintiff's evidence the complete understanding and agreement between plaintiff and defendant embraced the execution by defendant of the written option, the conveyance of the land to Perkins, or at his direction, at the stated price of $3200, and the taking back by defendant of the note for $800 and the deed of trust securing it; but that all of this was but a part and parcel of the entire contract made, and ancillary or incidental to the chief objects and purposes of the latter.

In Huckabee v. Shepard, supra, the defendant agreed with the plaintiff, a real estate broker, to allow him a stipulated portion of the sale price of certain lands if he would aid defendant in consummating a sale thereof. After beginning negotiations with third parties, but before consummating a sale, plaintiff purchased the property "for himself and associates," under a written contract executed by both of the parties. However, the evidence went to show that it was orally agreed that the fact that plaintiff was "taking an interest in the purchase would not affect his right to the stipulated part of defendant's compensation." It was held that the agreement of the parties as to plaintiff's compensation was distinct from the contract of sale itself. The court said: "The case, then, is one where the particular contract sued on was not reduced to writing and where the one actually put in writing was not intended to contain all matters of agreement between the parties. Oral evidence is admissible in such cases to show this state of facts, without infringing the rule excluding parol evidence of contemporaneous stipulations, which contradict or vary the legal effect of written instruments. This principle is a qualification of the general rule last stated, and is admitted to be of difficult and often of delicate application in practice. But it is well founded in reason, as well as established in authority, and is often invoked by the courts

to enable one party to escape from the fraud or injustice of the other.''

For the purposes of the discussion, supra, the written option has been treated as a valid subsisting written contract between the parties, though not as one containing all of the agreement between them. But in fact we do not regard it as *the contract* between plaintiff and defendant covering the real subject-matter of the litigation. And it is quite apparent that the instrument is not a contract binding upon plaintiff. It does not purport to be of such character. It was intended to give plaintiff or his assigns an option to purchase, binding defendant to sell on the terms named. It did not undertake to and did not bind plaintiff to do anything whatsoever; and plaintiff's signature to it could have had no legal effect. Added to this, though it may be inconsequential here, the evidence suggests that no actual money consideration was paid defendant for its execution, in which case, standing alone, it was not originally binding even upon the defendant. In any event its office was merely to obligate defendant to sell to Mark at a price which would net to plaintiff a commission of $800, and to fix the terms of the sale. Manifestly it in no sense can be said to constitute a contract between these parties into which became merged all of their prior or contemporaneous oral negotiations and bargainings, for it does not purport to be such an instrument. Evidently it was executed pursuant to some prior existing contract between plaintiff and defendant. Plaintiff's evidence tends with much force to show that this contract was in terms as alleged in the petition, and that defendant flagrantly breached it. In this connection, see Heagy v. Cox, 191 Mo. App. 377, 177 S. W. 684.

The argument that, though defendant did originally agree to sell his land for $2400, he may have changed his mind by December 12, 1911, when the option

agreement was executed, and that the latter instrument presumably embraces all of the terms and conditions of the contract between the parties, is sufficiently disposed of by what we have said above. But we may add that defendant's written declarations and conduct subsequent to December 12, 1911, appearing from plaintiff's evidence, go to show that defendant well knew that plaintiff was to receive $800, or the note and deed of trust therefor, as compensation for selling the land. Defendant, in his letter of February 27, 1912, refers to plaintiff's "interest" in the proceeds of the sale, and to a deed of trust executed for plaintiff. And plaintiff's testimony is that after the sale was consummated defendant gave him the deed of trust promising to send the note, but that defendant later refused to turn over the note to him, saying that he had changed his mind. And the demurrer, of course, admits the truth of plaintiff's testimony.

It expressly appears that plaintiff was to receive no commission or other compensation from the purchaser of this property but was to receive his compensation, if any, from the defendant; and there is no question in the case of a dual agency on plaintiff's part.

It is quite clear that plaintiff's evidence was such as to make out a prima-facie case in his favor, and that it was error to sustain the demurrer to the evidence. The judgment should therefore be reversed and the cause remanded with directions to set aside the nonsuit and grant plaintiff a new trial. It is so ordered. *Reynolds, P. J.,* and *Nortoni, J.,* concur.