**GARDEN PARK HOMES CORPORATION, a corporation, and Bernhardt Properties, Inc., a corporation, co-partners d/b/a Fischer-Surkamp Developments, Appellants,**

v.

**MARTIN MARIETTA CORPORATION, a corporation, Respondent.**

No. 57438.

Supreme Court of Missouri, Division No. 2.

April 8, 1974.

Robert C. Jones, Ziercher, Tzinberg, Human & Michenfelder, Clayton, for appellants.

William H. Ferrell, Keefe, Schlafly, Griesedieck & Ferrell, St. Louis, for respondent.

HOUSER, Commissioner.

Plaintiffs filed suit in four counts for damages for breach of contract. Defendant filed a motion to dismiss all four counts for failure to state a claim upon which relief can be granted, on the ground that Counts I, II and III are barred by the parol evidence rule, and that the terms of the agreement are not properly alleged in Count IV. The circuit court sustained the motion, dismissed Counts I, II and IV with prejudice, and dismissed Count III without prejudice. Plaintiffs appealed. The amount in controversy exceeds $375,000. We have jurisdiction, plaintiffs having filed their notice of appeal prior to January 1, 1972.

Count I alleged that plaintiffs and defendant entered into a lease agreement December 28, 1967 granting defendant the exclusive right to extract, develop, remove, process and sell sand on plaintiffs' described property for a term of 12 years, with defendant paying plaintiffs 12¢ a ton for sand shipped from the property; that the lease required defendant, upon termination, to leave the property in a reasonably

level state conforming to surrounding terrain and provide any necessary ground cover; that the lease agreement was prepared by defendant after plaintiffs' acceptance of terms outlined in defendant's letter of August 10, 1967, in which defendant offered to pay plaintiffs a minimum yearly royalty of $15,000; that while the lease agreement does not provide for a minimum royalty plaintiffs were assured by the president of the sand division of defendant that a minimum yearly royalty of $15,000 would be paid under the lease, but that defendant could not include that provision in the lease agreement "due to federal income tax laws"; that during 1969, the first full year of operation under the lease agreement, defendant paid to plaintiffs $13,133 for sand extracted; that plaintiffs demanded the difference between that figure and $15,000, but defendant refused to pay; that defendant assured plaintiffs that in following years the minimum would be exceeded; that it was exceeded in 1970; that the sand division president's verbal representation about the minimum yearly royalty was made with the express intention that it be relied upon, "as though included in said lease agreement", and that, plaintiffs did rely thereupon, without which inducement plaintiffs would not have entered into the lease agreement; that there has been partial performance under the lease and letter agreements, by plaintiffs delivering possession and control of the premises to defendant, and performing their obligations under the said agreements, and by defendant entering upon, assuming possession and control of the premises, extracting substantial quantities of sand therefrom and making the royalty payments in the years 1969 and 1970; that the lease agreement, and the "representations" made in the "letter proposal" dated August 10, 1967 and orally by the president of the sand division, "constitute the entire agreement between the parties relating to the lease of plaintiffs' premises and royalty payments therefor", and that defendant is indebted to plaintiffs in sum of $1,867 for year 1969 for upaid royalty payments, for which judgment was prayed.

Count II adopted the foregoing allegations of Count I and alleged in addition that on January 27, 1971 defendant informed plaintiffs it would extract no more sand from the premises, referring to the lack of a provision in the lease agreement for minimum payments "because of federal income tax laws"; that defendant has abandoned and terminated the lease and by reason thereof is indebted to plaintiffs for $150,000 (being minimum royalty under said lease agreements for the remaining 10 years of the term of the lease at $15,000 per year). Count II further contained allegations of demand and refusal to pay, and a prayer for $150,000.

Count III, "in the alternative to Count II", adopted the allegations of Counts I and II, and alleged in addition that by reason of the lack of provision in the lease agreement for a minimum royalty or rental payment "defendant was required to exercise reasonable diligence in extracting sand from plaintiffs' property and had the obligation to diligently develop and work said property so that plaintiff would receive royalties of not less than $15,000 per year during the term of said lease, said sum being the amount represented by said Karl O. Geng [the president of the sand division of defendant] as the minimum amount which plaintiffs would receive from the extraction of sand; that defendant has abandoned said lease and has therefor [sic] failed to use reasonable diligence to perform under said lease agreement; thereby breaching its contract with plaintiffs and, by reason thereof, plaintiffs have been damaged in the sum of $150,000", for which they prayed judgment.

In Count IV plaintiffs adopted the allegations of the preceding counts, and alleged in addition that under the terms of the lease agreement "upon expiration of the term thereof or upon termination of extraction, whichever occurred first," defendant was required to remove its machinery, etc. and leave the property in reasonably level state conforming to the surrounding terrain and provide any necessary ground cover, but that defendant has aban-

doned the lease, failed to thus restore and thus provide ground cover in violation of its obligations under the lease agreement; that the reasonable cost of restoring the property and providing ground cover is $75,000, in which sum plaintiffs have been damaged, and for which they prayed judgment.

The lease agreement, the letter of August 10, 1967 from Mr. Geng to Mr. Surkamp, and a letter of January 27, 1971 from Mr. Geng to. Mr. Springer of the Surkamp Company, were attached to the petition as exhibits.

By the lease agreement, Exhibit A, Surkamp granted, leased and conveyed to Manley (the sand division of defendant) all sand in and on the described property, and the exclusive right to extract, develop, etc. the same. After providing for the 12-year term beginning January 1, 1968 and terminating December 31, 1979, Exhibit A provided for payment of 12¢ per ton for all sand shipped from the property, based upon scale weights; inspection of sales records by Surkamp to verify quantities of sand removed, and the following:

## "3. Operations

Manley shall have the right during the term of this Agreement to install, construct, operate, maintain, dismantle and remove all of its plants, machinery, equipment, improvements and other facilities including with limitation, roads, rail lines, pipelines, telephone lines, water courses, dams, ponds, stock pile areas on the property and the right-of-way to strip and remove overburden on and from the property and otherwise use and occupy the property, all as reasonably required in connection with the extracting, processing, storing, selling and removing of sand in and on the property. Manley's operations on the property shall be conducted in a workmanlike manner but at all times solely as determined and directed by Manley. Surkamp will authorize Manley on its behalf and will cooperate with Manley to apply for and obtain zoning and other governmental permits, classifications, approvals, licenses and rights reasonably required in connection with the lawful conduct of Manley's business and operations on the property.

## "4. Indemnity

Manley agrees to indemnify and hold harmless Surkamp from and against any liability resulting from any injury to property or persons including employees of Manley, invitees, or other third parties on or about the property, whether by invitation or otherwise, resulting from Manley's negligent acts and omissions.

## "5. Ownership

Surkamp warrants and represents that it has good and marketable title to the property described herein and that the unrestricted right to enter into and fully to perform this Agreement, and that Manley shall have the undisturbed enjoyment of its right in and to the property provided for in this Agreement. In the event that the property is or becomes subject to mortgage or other liens, Manley shall have a right, but not be obligated, to make for the account of Surkamp, such payments as are necessary to discharge such mortgage or lien or alternatively to prevent or remedy such default and the amounts of any such payments shall be applied to reduce any royalty payments which Manley is obligated to make to Surkamp under this Agreement. Surkamp will promptly inform Manley of any default under or action to foreclose in such mortgage or lien.

## "6. Termination

Surkamp shall have the right to terminate this Agreement upon 30 days' written notice to Manley if Manley fails to make any royalty payments called for by this Agreement; such failure shall not be corrected by Manley within the 30-day period following reception of such notice by Manley.

Manley shall have the right to terminate this Agreement, upon 30-days' written notice to Surkamp, for any of the following reasons:

a) Any statute, regulation judgment, decree, order or other act of any local, national, state or municipal government or governmental agency, prevents or unduly restricts the ability of Manley to economically extract, process, sell and/or remove the sand from the property.

b) Any substantial default by Surkamp in complying with any of the terms and conditions of this Agreement.

"7. *End of Term*

Upon the expiration of the term of this Agreement or upon an earlier termination of this Agreement, pursuant to Article 6, Manley agrees to dismantle and remove plants, machinery, equipment, and other facilities installed or constructed on the property by Manley and to leave the property in a reasonably level state in conformance to the surrounding terrain and to provide any necessary ground cover. * * *"

The lease agreement, Exhibit A, was duly executed by plaintiffs and defendant.

Exhibit B follows:

"August 10, 1967

Mr. R. G. Surkamp
Surkamp Company
6333 Easton Avenue
St. Louis, Missouri 63133

Dear Bob:

This will confirm our various discussions and verbal agreement made Tuesday.

It is our understanding that we will mine the property which you have acquired at Festus, Missouri, on the following basis.

1. Royalty, 12¢ per net ton of 2,000 lbs. based upon scale weights. This will be the same weights that are used by ourselves and the railroads in billing our customers. A monthly report will be rendered and payment made on the 20th of each month following shipments.

2. Minimum yearly royalty, $15,000.

3. Time of the contract will be 12 years. In this light, it might be well if we consider January 1, 1968, as the first official year.

4. We will agree to completely remove all mineral and leave the property in a reasonably level state in conformance to the surrounding terrain.

As you know, I will be away for the coming week but will immediately get busy with our legal staff in New York, upon my return, in order to develop the proposed contract.

I enjoyed the lunch with you and Gary very much and will look forward to the pleasure of seeing you again in the near future.

Best regards.

Yours very truly,

MANLEY SAND DIVISION
MARTIN MARIETTA CORPORATION

Karl O. Geng
President"

Exhibit C follows:

"January 27, 1971

Mr. Gary Springer
Surkamp Co.
11722 Administration Dr.
Creve Coeur, Mo. 63141

Dear Gary:

I enjoyed my visit with you and Eddie recently in spite of the fact that I, of necessity, was the bearer of bad tidings.

I have now checked with our legal department. They feel that we have a lease which is valid through December 31st of 1979. There is no provision for any minimum payments. As you know, due to the federal income tax laws, we can't write a lease of this type. In addition to this, there is no obligation on our part that we mine any portion of the property. Here again, irregardless of corporate policy, I would feel it extremely dangerous to make an arrangement of this type and, in fact, refused to do so on one major deal which ultimately did not materialize because of this position.

Accordingly, it appears to me that we are in this position.

A. At the present time we are planning to continue mining on our own property and do not plan to reopen a quarry on the Fischer-Surkamp property.

B. The lease remains in effect and possibly at some time in the future, prior to 1979, our plans may be altered.

However, I still feel in all fairness to you people that our business relations have been fair and above board and that we should not hold you to this position. Certainly, if I were on your side of the table I would ask that the contract be released.

If you would like to have me come down and have another conference with yourself, Eddie and Bob Surkamp, I will be glad to do so at your convenience.

Best personal regards

Karl O. Geng
President"

Plaintiffs' first point on appeal is that the court erred in dismissing the four counts because, considering all well-pleaded facts as true, each of the counts states a claim upon which relief can be granted, and none is barred by the parol evidence rule.

We have concluded that the court erred in dismissing Counts I and II. A claim upon which relief may be granted is stated on the theory that the entire agreement between the parties, partly written and partly oral, consists of the lease (Exhibit A) as supplemented by the verbal representations of Mr. Geng and the letter (Exhibit B), which add to the lease the provision for a minimum royalty of $15,000 annually. Appellants come within a well-established exception to the parol evidence rule, namely, that even where a written contract exists between the parties touching the same general subject-matter, "extrinsic evidence may nevertheless be admissible in proof of a prior or contemporaneous collateral parol agreement between them, separate and distinct from that contained in the writing itself, and not inherently in conflict with the latter." Bowers v. Bell, 193 Mo.App. 210, 182 S.W. 1068, 1070 (1916), cited and quoted with approval in Mitchell v. Philippi, 359 Mo. 754, 223 S.W.2d 441, 444 [2] (1949). The Court en Banc recently considered and reaffirmed this concept in Beuc v. Morrissey, 463 S. W.2d 851 (Mo.1971), where a written contract was silent as to the time for performance. It was held that the parol evidence rule did not preclude introduction of evidence that the parties had orally agreed on the time for performance. The following from Corbin on Contracts, § 593, p. 557, pertinent here, was quoted in Beuc: "Oral testimony admitted for this purpose is not varying or contradicting the writing; it is merely enabling the court to fill a gap by adding something that is not expressed in the writing. * * *" The rule is thus stated in 17 Am.Jur.2d Contracts § 262: "In construing a contract, and in accordance with the exception to the parol evidence rule where a contract has been only partially integrated, the court may consider portions of an entire agreement not contained in the writing where it appears that only a part of it was intended to be

reduced to writing. It is permissible to supply those things which were omitted if the part omitted is not inconsistent with the writing, but independent of, and in addition to, it. * * *" See Greene v. Gust, 26 Ill.App.2d 2, 167 N.E.2d 438 (1960). Here the allegations of the petition are not contradictory of, repugnant to or inconsistent with the provisions of Exhibit A, the written lease, but are supplementary thereto. The fair intendment of the pleader is that a minimum annual royalty of $15,000 was a part of the entire agreement but that the provision with respect thereto was intentionally omitted from the writing for tax reasons.

■■■ The court erred in dismissing Count III, in which plaintiffs, pleading in the alternative, seek damages for failure of defendant to exercise reasonable diligence in extracting sand from the premises based upon an obligation to diligently develop and work the property so that plaintiffs would receive royalties. There is an implied covenant in the lease agreement that defendant will diligently extract sand so that plaintiffs, the lessors, may obtain income from the operation, which was the inducement to grant the lease in the first place. The lessee cannot retain the lease through December 31, 1979 and reserve its rights thereunder, without working the property and giving full force to the rights of lessors. The applicable rule was stated in George v. Jones, 168 Neb. 149, 95 N.W. 2d 609, 616, 76 A.L.R.2d 710, 720 (1959): "Where a lessee covenants expressly to pay the lessor a certain royalty on all the minerals or products that may be mined under a mining lease, even though there is no express covenant that the lessee shall work the mine continuously, or in any particular way, or at all, there is manifestly an implied covenant on his part that he will work it as such mines are usually worked, with ordinary diligence, under the surrounding circumstances; not, indeed, simply for his own advantage and profit, but as well to the end that the lessor may secure the actual consideration for the lease.

Such a covenant arises by necessary implication. It would be unjust, unreasonable, and countervene the nature and spirit of the lease, to allow the lessee to continue to hold his term for a considerable length of time, without making any effort to work the mine. Such a construction of the rights of the parties would enable him to prevent the lessor from getting his royalties under the express covenant to pay for the same, and deprive him of all opportunity to work the mine himself, or permit others to do so. The law does not tolerate such practical absurdity, nor will it permit the possibility of such injustice. It is of the essence of the lease, necessarily implied, that the lessee shall work the mine with reasonable diligence, or surrender the lease. See Conrad v. Morehead, 89 N.C. 31." See Anno: Mineral Rights—Duty to Develop, 76 A.L.R.2d 721–750; 54 Am. Jur.2d, Mines and Minerals, § 130.

Although the allegation in Count III that plaintiffs have a contractual right to a $15,000 annual yield from the property may be questioned, and notwithstanding the effect of the allegation that defendant has abandoned the lease has not been raised or considered on this appeal, we hold that the allegations raising an implied covenant to work the property with diligence state a claim upon which relief can be granted.

■■■ There was no error in dismissing Count IV but the court erred in ordering its dismissal with prejudice. Count IV as written did not state a claim upon which relief can be granted because it mistakenly alleged that defendant's obligation to level the ground and provide ground cover arose upon two contingencies: (1) upon expiration of the 12-year term and (2) upon termination or extraction, whichever occurred first. This was not the agreement. Article 7 of Exhibit A provided that the obligation arose "[u]pon the expiration of the term of this Agreement or upon an earlier termination of this Agreement, pursuant to Article 6, * * *". Plaintiffs had no cause of action based upon (1) above be-

cause the term of the lease agreement has not expired. They had no cause of action based on (2) above because the lease agreement did not so provide. Count IV was properly dismissed for failure to allege that the lease agreement had been terminated pursuant to Article 6. The order of dismissal, however, should have afforded plaintiffs an opportunity to amend Count IV to allege that the lease agreement had been terminated pursuant to Article 6, if that be the facts of the case.

Accordingly, the order of the circuit court with respect to Counts I, II and III is reversed; with respect to Count IV is reversed insofar as the dismissal with prejudice is concerned and the cause is remanded with directions to make the order of dismissal of Count IV without prejudice, and to allow further pleading consistent with this opinion.

STOCKARD, C., concurs.

PER CURIAM:

The foregoing opinion by HOUSER, C., is adopted as the opinion of the court.

All of the Judges concur.