Argued March 10, affirmed May 31, petition for rehearing denied June 28, 1977

## HAMILTON, *Appellant,*
## *v.*
## AUTO DRIVEAWAY CO. et al, *Respondents.*
### (TC 417677, SC 24553)
564 P2d 1052

J. D. Bailey, Hillsboro, argued the cause for appellant. With him on the brief were Schwenn, Bradley & Batchelor.

Merrill G. Emerick, Portland, argued the cause for respondents. With him on the brief were Phillips, Coughlin, Buell, Stoloff & Black.

Before Denecke, Chief Justice, and Bryson, Linde and O'Connell,* Justices.

LINDE, J.

*O'Connell, J., did not participate in the decision of this case.

**LINDE, J.**

Defendants Eugene and Sue Frye operated the Kansas City, Missouri, branch of Auto Driveaway Co., a corporation which provides a matchmaker's service to persons who want their cars transported and persons who wish to drive someone else's car to their destinations. Plaintiff Douglass Hamilton, a Portland attorney who was vacationing in Missouri, arranged with Mr. Frye to drive a car from Kansas City to Gresham, Oregon, where it was to be delivered to its owner. A part of the arrangement was a $100 deposit paid by plaintiff in Kansas City which was to be returned to him in Gresham when he delivered the car "in the same condition as received." Plaintiff appeals from a judgment of involuntary nonsuit in an action arising from a dispute over the $100.

Plaintiff had discussed the extent of Driveaway's insurance coverage with Mr. Frye before he undertook to drive the car to Oregon. On the way he dented a fender, causing damage later estimated at $51. He pointed this out to the owner's agent when he delivered the car in Gresham. The owner's agent gave him two $50 checks, one drawn by the car's owner and the other on Auto Driveaway's account. When defendants learned of the damage, they stopped payment on Driveaway's check and caused the owner to do the same. After a fruitless demand on defendants to return his $100 deposit, plaintiff brought this action.

The complaint alleges two causes of action, one to recover on Driveaway's $50 check and the other for damages for fraud. At the end of plaintiff's evidence, the trial court granted defendants' motion for involuntary nonsuit on the ground that the written terms of the $100 deposit clause could not be varied by plaintiff's evidence of defendants' oral agreement to insure and that there was no evidence of fraud to go to the jury.

The parties briefed the issue of parol evidence under the law of Oregon. ORS 41.740. Upon inquiry at

oral argument, counsel supplemented their briefs with respect to the application of the parol evidence rule in Missouri, where the contract was made. On examination of the precise evidence in the record, however, we conclude that the judgment must be affirmed in any event.

The written agreement concerning the deposit provided:

DRIVEAWAY AGREES THAT:

1. The Driver will be reimbursed the sum of $100.00 by the person shown above as NAME AT DESTINA-TION upon receipt of the above described vehicle at vehicle's destination in the same condition as received, normal wear and tear excepted, plus nothing.

Plaintiff's evidence, by his testimony and that of Mr. Frye, showed that he was concerned to assure himself of complete insurance coverage while using the car furnished by Driveaway. Plaintiff testified that he told Frye:

. . . "But before I give you any money—before I give you this contract and before I take those keys, I want to make sure that whatever responsibility for physical damage to this car—physical damage to anybody I might hit or whatever—that I'm insured against that."

And he said, "Don't worry. You are totally insured. But I want you to be very careful because the way we handle it internally here, the first $200 comes out of my pocket."

Mr. Frye testified as follows about that conversation:

. . . I think he asked if there was insurance on the car, and I said there was insurance on the car. . . . I told him that we have a $200 participation, that in case anything happens that I would have to pay $200 out of my own pocket, and that since we were a small business—just my wife and I operate the business—that I would sure appreciate it if he didn't allow anything to happen, like a damaged fender or a scrape or whatever. . . .

The evidence, apart from the parol evidence rule, would certainly permit a jury to find that there was an oral agreement that defendants would provide the

insurance coverage that concerned Mr. Hamilton. However, the testimony of neither witness appears to relate this insurance to the $100 deposit. On its face, the written agreement quoted above states that the deposit will be returned if the car is delivered in the same condition as received; it does not relate the $100 to paying for any damage to the car while in the driver's possession. Its literal and natural reading is not that the driver is to pay for such damage up to $100, but that the deposit is forfeited in the event of damage to the car before its delivery to its owner. This does not seem an improbable or unreasonable attempt to protect the owner and Driveaway against the inconvenience and loss of time caused by repairs or by late delivery, or the wear and tear of mileage driven in excess of those stipulated,[1] quite apart from the cost of any repairs themselves. At the trial Mr. Frye repeatedly referred to the quoted clause as a "performance bond" and denied ever stating that the clause represented the driver's liability for damages up to the first $100. Nor did Mr. Hamilton's testimony state more than that his insistence on insurance was to make certain that he was fully insured for any responsibility he might have for the car, either directly or by subrogation of an insurer.[2] It did not directly contradict that of Mr. Frye as to the significance of the $100 deposit clause.

If this were an action to hold plaintiff liable for damage to the automobile, or if plaintiff had demanded that defendants repair the dented fender before he delivered it to its owner, he might perhaps have been able to prove a collateral oral agreement to insure that would withstand Missouri's as well as

---

[1] These conditions were covered in paragraphs 3, 8, 9, and 15 of the agreement.

[2] Plaintiff's testimony suggests that his concern about insurance may have related to paragraph 14 of the contract, which provides that the driver assumes all risks relating to safe condition and operation of the vehicle, and possibly paragraphs 17 and 18, although these paragraphs appear designed to protect Auto Driveaway against claims by drivers or passengers, not by the owner or third persons.

Oregon's parol evidence rule. See Comment, 27 Missouri L Rev 269, 279-282 (1962); *Garden Park Homes Corp. v. Martin Marietta Corp.,* 507 SW2d 368, 373 (Mo. 1974). But there is no evidence that defendants made a claim against plaintiff for the damage to the car or that they failed to insure against such a claim by the owner. Thus it does not appear how the agreement concerning insurance, if truly collateral and therefore provable, would entitle plaintiff either to recover the deposit or to claim fraud. On the other hand, if there had been substantial testimony seeking to prove that the oral agreement was meant to supersede the written terms of the $100 deposit clause, it would be difficult to find such an agreement "collateral" for purposes of the parol evidence rule. See Comment, *supra,* at 269-270. On either view, plaintiff cannot prevail in this action.

Affirmed.