## WISCONSIN RED PRESSED-BRICK Co. *vs.* DAVID HOOD *et al.*

Argued June 14, 1893.   Reversed Sept. 8, 1893.

**No Warranty of Quality Implied to Vary a Written Contract of Sale.**

Plaintiff and H., one of the defendants, entered into a written contract whereby the former agreed to furnish and the latter to receive a certain quantity of bricks, at a stipulated price per thousand, "of the grade known as 'common brick,'" all to be "of good quality, and equal to sample sent." There was no finding of the court in reference to the sample. *Held*, disregarding this omission in the findings, that there was no implied warranty in the sale that the bricks to be furnished should be reasonably fit for the purpose for which they were purchased, of which purpose plaintiff was advised.

**Conclusion of Law not Justified by the Facts.**

*Held*, also, that certain findings of fact herein, based upon the assumption that such a warranty existed, did not justify the conclusion of law.

Appeal by plaintiff, the Wisconsin Red Pressed Brick Company, a corporation, from an order of the District Court of St. Louis County, *J. D. Ensign*, J., made February 1, 1893, denying its motion for a new trial.

On March 18, 1891, the defendant, David Hood, made a contract with the plaintiff, as follows:

"I have this day bought from the Wisconsin Red Pressed Brick Co., and they hereby agree to sell to me, four hundred thousand brick (400,000) to be of the grade known as common brick, at the agreed price of five dollars and fifty cents per one thousand brick, ($5.50) free on board cars at Menominee, Wis. Shipment to commence not later than April 15, 1891, and to be shipped as fast as required, all to be delivered not later than June 1, 1891, brick to be of good quality and equal to sample sent by Mr. Alexander, Supt. Payments to be made every thirty days. Payable at Security Bank of Duluth.                                  David Hood,

Contractor."

Hood then had a contract with the Hurd Refrigerator Company to furnish material and construct for it, a factory and warehouse

at Duluth. He received and used in that work 331,000 of the brick. His contract with the Refrigerator Company provided that the walls of the buildings, commencing on the top of the watertable, should be of the best quality of red kilnrun, well burned, Menominee brick, or some other red brick equally as good and acceptable, and the external walls faced with selected bricks of an even color. Plaintiff made, and filed a statement for a lien on the buildings and lots on which they stood, and begun this action to foreclose for an unpaid balance of $900. Defendants answered that the brick delivered were not common brick of good quality or fit to be used in the buildings, that they contained an alkaline substance which caused them, upon being exposed to the weather, to crumble and chip off on the exposed surface; that the defect was latent and was not discovered until the brick had been used and exposed to the weather for a month. The issues were tried and findings were filed December 8, 1892, and judgment ordered that plaintiff take nothing by its action. Among the findings of fact was one that plaintiff was a manufacturer of brick at Menominee, Wis., and knew for what purpose Hood desired the brick. Plaintiff claims that the conclusion of the trial court must have rested on the assumption, that notwithstanding the written contract, there was an implied one also, that the brick should be reasonably fit for the purpose intended and that this was, of course, erroneous.

*Wm. A. Lancaster,* for appellant.

The written contract is clearly executory. The article to be supplied is brick of the grade known as common brick and of good quality. It is clearly a sale by description. The grade and quality are clearly conditions, not warranties. *Maxwell* v. *Lee,* 34 Minn. 511; *Thompson* v. *Libby,* 35 Minn. 443.

The written contract controls. It can neither be added to nor subtracted from. The purpose for which the brick were to be used, although made known to plaintiff, could not affect the contract or raise a warranty not expressed by its terms. *Whitmore* v. *So. Boston Iron Co.,* 2 Allen, 52; *Chanter* v. *Hopkins,* 4 M. & W. 399; *Dutton* v. *Gerrish,* 9 Cush. 89; *Goulds* v. *Brophy,* 42 Minn. 109; *Seitz* v. *Brewers R. M. Co.,* 141 U. S. 510.

*Wm. B. Phelps,* for respondent Hood.

There was an express, as well as an implied, warranty, and the damages resulting from the breach may be measured by the damage to the buildings in which the brick were used. Such damages the parties might reasonably anticipate as certain to result from the defects complained of. *Paine* v. *Sherwood,* 19 Minn. 315, 21 Minn. 225.

The plaintiff, being a manufacturer of, and selling articles not particularly designated, for a given purpose, there is an implied warranty that they shall be of a quality reasonably fit for that purpose; and for a breach thereof, the purchaser receiving and using the articles may recover damages. *Breen* v. *Moran,* 51 Minn. 525.

*White, Reynolds & Schmidt,* for respondent Hurd Refrigerator Company.

The proof did not sustain the allegation that the brick agreed to be furnished by the plaintiff to Hood should be kilnrun brick, but it *did* sustain the allegation that they should be fit for the erection of such a building, for it was that the brick should be equal to samples sent, and all agreed that if they had been equal to the samples they were warranted to equal they would have been fit for such erection. It was not necessary, at least for the Refrigerator Company, to allege any express warranty, for it had no contract with the plaintiff. It only needed that it should allege that plaintiff should furnish brick fit for the purpose, and when plaintiff's own salesman testified that he agreed to furnish bricks warranted equal to samples undeniably fit for the purpose, and the testimony showed as it did that the wall erected therefrom would not last more than one third as long as one constructed from brick fit for the purpose, it appeared, first, that the brick furnished were not such as plaintiff contracted to furnish, and second, that they were not fit for the purpose for which they were furnished.

COLLINS, J. Plaintiff corporation, having furnished a quantity of bricks for use in the erection of a factory building and an engine house for defendant refrigerator company, brought this action to foreclose its lien. The factory had been built by defendant Hood under a contract with the refrigerator company, while the engine

v.54M.—35 .

house had been erected by the company itself, Hood having been the superintendent of the work. All of the bricks were purchased by Hood, the agreement for the same being in writing, and, according to its terms, plaintiff was to furnish free on board cars at its yards, for $5.50 per thousand, a specified quantity of bricks "of the grade known as 'common brick,'" and all to be "of good quality, and equal to sample sent" by the superintendent of the yards.

Under the contract for the erection of the factory building, also in writing, Hood was to use "the best quality of red, kiln-run, well-burned Menominee brick, or some other red brick equally as good and acceptable."

Upon the trial of the cause, without a jury, the court below found the contract between the defendants to be as above stated, but that Hood did not use "kiln-run" bricks, as he had agreed. It also found that plaintiff had contracted with Hood to furnish "common brick, of good quality, to be used in the erection of a factory and warehouse and engine house," at $5.50 per thousand, and with full notice and knowledge that these bricks were to be used in the erection of "said warehouse." There was no finding whatever as to whether the bricks furnished were to or did correspond with the sample sent. It was also found that "many" of the brick furnished and used in the construction of the buildings were not common brick of good quality, nor were they fit or proper to be used in the walls, the defects being specifically stated, and, further, that such defects could not have been ascertained before the walls were built, and the defective bricks exposed to the elements upon outside surfaces, for at least one month. It was further found that, "had said brick been of the quality and kind called for by the terms of the contract between plaintiff and said Hood and said Hood and the refrigerator company, and as agreed by plaintiff, they would have been worth" the agreed price, but, because of the defects mentioned, they were worth but $2.50 per thousand. From the conclusion of law it may be gathered that this finding, although vague and indefinite as to whether it fixes the value of the "many" bricks previously referred to as failing to meet the contract, or the value per thousand of the entire quantity furnished, has reference to the latter. It is the only finding, however, in which the amount of damages sustained by defendants, because of the alleged breach of plaintiff's contract, is

fixed or attempted to be fixed. If unsupported by the evidence, or insufficient to warrant the conclusion of law by which the value of the entire quantity of bricks furnished by plaintiff was reduced to $2.50 per thousand, a new trial must be had, and this remark applies to all of the findings of fact covered by plaintiff's assignments of error.

Counsel for defendant Hood evidently tried this case upon the theory that there was an implied or an express warranty that the bricks to be furnished under the contract between plaintiff and Hood should be suitable for the walls of the factory and the engine house, and in his brief it is asserted that there was both an implied and express warranty of this nature, the claim being predicated upon the fact that plaintiff knew, when making the contract, that Hood intended to use the bricks in the walls of the building he had agreed in writing to erect for the refrigerator company; while counsel for the latter present their case on appeal as if the court had found as a fact that the bricks to be furnished were to correspond with certain samples, and had failed so to do, as to which the findings are silent, as before stated. Therefore some confusion necessarily arises as to the ground upon which counsel claim that the order refusing a new trial is sustainable.

It seems to be conceded that the plaintiff's contract was executory. It may have been a sale by sample, and, if so, the bricks furnished may not have been in compliance with the requirements, but these questions are not before us for obvious reasons. As the contract was in writing, and all of the conditions respecting quality have been stated, it is plain that there was no express warranty of the bricks. Nor can any warranty not implied from its terms be added, either by implication of law or by parol proof, to the written contract. It was shown by undisputed testimony that there were several grades of bricks known to the trade, the cheapest and poorest being the grade mentioned in plaintiff's contract with Hood, namely, "common." A better and more expensive grade is styled "kiln run," and it was this grade, not "common," which Hood, in his contract with the refrigerator company, agreed to use, and, while the work was progressing, insisted repeatedly that he was using, although he knew to the contrary. The difference between these two grades is substantial, according to the evidence, both as to quality

and value. Kiln run include all bricks found in a kiln, taken as they come, while common are the bricks remaining after some of the very best quality have been taken out. It follows that the common grade will include a much larger percentage of soft-burned bricks than kiln run, and that a wall built of the grade first mentioned cannot be as durable, nor can it be made as uniform in color, as when built of kiln run. At any rate, Hood agreed to use the latter, and deliberately purchased an inferior article.

There was no evidence in the case, nor was there a finding of fact, which would justify the claim of counsel that there was an implied warranty that the bricks to be furnished by plaintiff should be suitable for the use intended by Hood. The written contract was complete and unambiguous, and by its terms plaintiff was to furnish the grade of bricks known as common, to be of good quality and equal to sample. Because the plaintiff was informed that the bricks were to be used in building a factory for defendant company, it cannot be said that there was an implied warranty that they should be reasonably fit for the purpose. Hood contracted for, and plaintiff agreed to furnish, a specific article of a well-recognized kind or description, according to the findings. This article was not to be supplied to satisfy a required purpose, as was the fact in *Breen* v. *Moran*, 51 Minn. 525, (53 N. W. Rep. 755,) cited by counsel, that purpose, and not any specific article, being the essential matter of the contract; but it was to be of a well-known grade and quality. If an order be given for a specified article of a recognized kind or description, and the article is supplied, there is no warranty that it will answer the purpose described or supposed, although intended and expected to do so. *Goulds* v. *Brophy*, 42 Minn. 109, (43 N. W. Rep. 834;) Leake, Cont. 404. Applying this well-settled and sensible rule to this case, it is obvious that a conclusion of law based to any extent upon a finding of fact that the bricks were not fit or proper to be used in the erection of the buildings cannot be sustained. Again, it is obvious that a conclusion of law by which the amount of damages sustained by the refrigerator company is fixed, solely and wholly based on the finding of fact before mentioned,— that, had the bricks "been of the quality and kind called for by the terms of the contract between plaintiff and said Hood and said Hood and the refrigerator company," etc.,—cannot stand. This

finding assumes that plaintiff agreed to furnish the same grade of bricks that Hood agreed with the refrigerator company to put into the walls of the factory building, which was not the fact. The plaintiff was under no obligation to furnish bricks known as "kiln run," and, so far as shown by the record, had no knowledge that Hood had obligated himself to do so. This finding was certainly based on the presumption that, as to kind and quality of materials, the contracts were alike.

We need not refer specifically to any of the remaining assignments of error, for we are not to anticipate the rulings of the court below on another trial. We cannot refrain from remarking, however, that the delinquencies of the defendant Hood in the performance of the contract made with his codefendant must not be unloaded onto the plaintiff.

Order reversed.

(Opinion published 56 N. W. Rep. 165.)