WISCONSIN RED PRESSED BRICK COMPANY v. DAVID HOOD and Others.[1]

February 1, 1897.

Nos. 10,357—(248).

**Finding as to Value.**

*Held*, the finding of the court on the question of value is sustained by the evidence.

**Sale of Brick—Res Judicata.**

The decision on a former appeal (54 Minn. 543), that plaintiff agreed to sell and deliver a well-known grade of brick, and not brick suitable for a particular purpose, and is not liable on an implied warranty that the brick are suitable for such purpose, adhered to.

**Mechanic's Lien—Subcontractor.**

In order that the subcontractor may acquire a mechanic's lien, it is not necessary that his contract and his performance of the same should conform in all respects to the contract between the contractor and the owner; and in a case where brick furnished as aforesaid by the subcontractor, and used in the building, were inferior in quality to those called for by either contract, it is *held* that the owner had no defense against the lien except such as could have been interposed by the contractor against the claim for personal judgment against him.

**Latent Defect—Contract Price.**

There was a latent defect in the brick, caused by the use of unfit clay in their manufacture, and not discoverable by the exercise of care and skill in inspecting the brick after they were manufactured. The contractor, in good faith, and without knowledge of the defect, purchased the brick, and used them in the erection of the building, which, after being completed,

[1] Reported in 69 N. W. 1091.

was accepted by the owner. By exposure to the weather, the defect in the brick subsequently developed, and was discovered. *Held*, the contractor, being without fault, is entitled to recover the contract price.

Action in the district court for St. Louis county against David Hood, Hurd Refrigerator Company and New Duluth Land Company. From a judgment in favor of plaintiff and from an order, Ensign, J., denying a motion to set aside the judgment, defendant Refrigerator Company appealed. Affirmed.

*White & McKeon*, for appellant.

*Shaw, Cray, Lancaster & Parker*, for plaintiff respondent.

*Wm. B. Phelps*, for respondent Hood.

CANTY, J. This is the third appeal in this action. See 54 Minn. 543, 56 N. W. 165; 60 Minn. 401, 62 N. W. 550. After the second appeal, the case was again tried before the court, without a jury. The court found that about 80,000 of the brick sold by plaintiff to the contractor Hood—

"Contained a latent or hidden defect, known to plaintiff, which caused them to disintegrate and crumble upon their exposed surfaces, and such defect was not visible or known to the defendants when using said bricks in said buildings, nor when they accepted the same, nor could such defect have been discovered by the use of ordinary means, but could only be determined and developed by exposure in the walls. That, to the extent of 80,000 bricks, said lot of bricks so sold and delivered were not common bricks of good quality, and that the value of said entire lot was and is the sum of $3.50 per thousand, and not $5.50, which difference in value was caused by the hidden or latent defect aforesaid."

On this finding, the court ordered judgment in favor of plaintiff, and against Hood, for the balance due at such rate of $3.50 per thousand, to wit, $258.50, and declared the same a lien on the land of the Hurd Refrigerator Company, and the buildings erected thereon. On certain stipulations made on the trial, the court found that there is due Hood the further sum of $3,416.17, with interest thereon since October 5, 1891, for which a lien was declared on said premises. From the judgment entered thereon, and also from an order refusing to set aside the judgment, the refrigerator company appealed.

1. The bill of exceptions states that it contains all the evidence offered and received having any bearing on the value of the brick.

Appellant contends that the evidence will not sustain a finding that, at the time of delivery, the value of the brick was as much as $3.50 per thousand. We cannot so hold. One of plaintiff's witnesses testified that the brick so delivered was of the value of $6 per thousand.

2. The bill of exceptions further states:

"Charles Hurd, a witness sworn on the part of the defense, testified that the difference in value of the factory building from what it would have been if built of common brick of good quality, or of the best quality of red, kiln-run, well-burned Menominee brick, was $2,500 less than it would have been if so built, and, in like manner, the difference in value of the engine house was $3,000 less than it would have been if built of such brick; and there was no testimony in contradiction of this."

Appellant contends that, on this state of the evidence, plaintiff is not entitled to recover anything, because the damage to appellant's building by reason of the defective character of the brick is greater that either the value or contract price of the brick. This question was disposed of on the first appeal in this case, where the court held that there was no evidence—

"Which would justify the claim of counsel that there was an implied warranty that the bricks to be furnished by plaintiff should be suitable for the use intended by Hood." [2]

Plaintiff agreed to sell and deliver Hood bricks "to be of the grade known as common bricks, * * * to be of good quality and equal to the sample sent." On the last trial the court found:

"That no sample or samples of the grade known as 'common' were ever, in fact, agreed upon or delivered to Hood, as mentioned in said contract, and the brick actually delivered were accepted by defendants without any reference to any sample or samples."

On said first appeal, we held that this contract called for an article of a well-known kind or description; and that there was no implied warranty that it was fit for the purpose for which the purchaser intended to use it. That decision is now the law of this case. Hood, having accepted and retained the brick, is liable for the reasonable value of the same.

3. But appellant claims that, even if plaintiff is entitled to judgment against Hood, it is not entitled to a lien on defendant's prop-

[2] 54 Minn., at page 548, 56 N. W., at page 167.

erty. We cannot so hold. In order that the subcontractor may maintain a mechanic's lien, it is not necessary that his contract and his performance of the same conform in all respects to the contracts between the contractor and owner. While better brick were needed for the outside course of the walls, the bricks furnished were reasonably adapted for the rest of the walls. Under the circumstances, appellant has no defense except such as could have been interposed by Hood himself.

4. It was stipulated on the trial:

"It is admitted between the defendants that the amount due the defendant Hood from the Hurd Refrigerator Company, if there had been a fulfillment of the contract between the defendants, so that there would be no deduction on account of the bad quality of the brick and the damage arising therefrom, would be $3,695.67, with interest from the 5th day of October, 1891; and, had the brick furnished by the plaintiff to the defendant Hood been according to the contract between the plaintiff and the defendant Hood, this would be the amount due, and a lien on the property described in the complaint."

It was further stipulated between the defendants that a full performance by plaintiff of the contract with Hood would have made a full performance of Hood's contract with the refrigerator company, and that—

"Whatever default in the last-mentioned contract said Hood was guilty of was due to, and caused by, the default of the plaintiff in the performance of the first-mentioned contract in furnishing brick."

As we construe these stipulations, they mean that, if both contracts were fully performed, there would be due Hood $3,695.67, after deducting the full amount due plaintiff, at the rate of $5.50 per thousand for all the brick furnished by it, as, under the statute (G. S. 1894, § 6238), the contractor is entitled to a lien only for the balance due him, after deducting the amount due the subcontractor. The court allowed Hood $3,416.17, which was less than was stipulated as due him. But acting on the theory that the amount which would be due plaintiff, if it had fully performed, was not deducted when stipulating the amount due Hood, his attorney entered judgment in his favor for only $3,045.67, and interest thereon since June 29, 1891. If the theory thus acted on is correct, there has not been enough deducted from what was awarded Hood, because, if plaintiff had prop-

erly performed, it was entitled to recover a balance of $920.50, instead of only $258.50, and, in equity at least, its faulty performance should not inure to Hood's benefit, and increase the amount awarded him, but, on the contrary, the whole $950.50 should, in any event, have been deducted from the balance which would be due Hood according to his contract with the refrigerator company.

However, appellant makes no point as to this, but contends that, on the uncontradicted evidence as to the damage to the buildings caused by the latent defect in the brick, Hood is not entitled to recover anything. Hood's contract with appellant required him to furnish "kiln-run" brick, while his contract with plaintiff required it to furnish only "the grade known as common brick," which, as the evidence shows, is a grade inferior to kiln-run brick. Appellant might, at least, have been entitled to recoup against Hood, as damages, the difference between what the buildings would be worth if built of kiln-run brick, and what they would be worth if built of the grade known as "common brick." But there was no evidence introduced to prove the amount of this difference, and besides, by the stipulation above referred to, the defendants contradicted and nullified the effect of the evidence showing that there was such a difference, and that Hood had deliberately proceeded to violate his contract with the refrigerator company, by contracting with plaintiff for common brick, instead of kiln-run brick.

But appellant contends that Hood is responsible to it for the latent defect in the brick, and that it is entitled to recoup against him the amount of damage to the buildings caused by such defect. We cannot agree with appellant. Undoubtedly, if Hood had manufactured the brick himself, he would then, so to speak, be manufacturer of both the brick and the buildings, and would be liable for the damage to the buildings caused by such latent defect in the brick. But Hood did not manufacture the brick, had no knowledge of the defect in them, acted in good faith, and exercised reasonable care and skill. No amount of care and skill would have discovered the defect, and his contract was completed, and the building accepted by the refrigerator company, before the defect was discovered. Even though an article is furnished for a particular use, if the vendor is not the grower or manufacturer, there is, as a general rule, no implied warranty against latent defects. The vendor of provisions for

immediate consumption is generally held to be an exception to this rule, and it has sometimes been made a question whether the vendor of seed is not also such an exception. Caveat emptor is the general rule.

In Bluett v. Osborne, 1 Starkie, 384, Lord Ellenborough held the plaintiff entitled to recover for a bowsprit furnished by him for a vessel, although the bowsprit turned out to be defective. It was apparently good when furnished. It does not appear that plaintiff was the manufacturer. In Gray v. Cox, 4 Barn. & C. 108, the plaintiff furnished copper sheathing for a vessel. The copper contained a latent defect, and, while the case went off on another point, stress was laid on the fact that plaintiffs were not the manufacturers of the copper. Jones v. Bright, 5 Bing. 533, is a case quite similar in all respects, except that the seller of the copper was himself the manufacturer, and the court held him liable on an implied warranty against the latent defect. Some of the judges used language which would imply that any seller, whether manufacturer or not, is liable on such an implied warranty, but no cases were cited to sustain such dicta. In Brown v. Edgington, 2 Man. & G. 279, the seller represented himself to be the manufacturer when he contracted to furnish the article. In Shepherd v. Pybus, 3 Man. & G. 868, 881, it is said:

"The subject of the purchase was a barge built by the seller himself; and the purchaser had had no opportunity of inspecting it in its progress, and the defects which were afterwards discovered were not apparent upon inspection, and could only be detected upon trial."

For these reasons, it was held that there was an implied warranty that the barge was fit for ordinary use. In Jones v. Just, L. R. 3 Q. B. 197, the court laid down five propositions, covering different types of cases, and, in the fourth, the dealer, as well as the manufacturer, is said to be liable on such an implied warranty in a sale made by him; but the cases cited in support of this are the ones last above cited, which do not sustain the proposition that the mere dealer is liable on such an implied warranty. The case then before the court did not call for any decision on this point, as it was merely a case of a sale of goods to arrive in port, and, when they arrived, they were found not to be merchantable. In Hoe v. Sanborn, 21 N. Y. 552, the cases were reviewed at length by Seldon, J.; and it is

held that, even where a manufacturer furnishes an article for a specific purpose, an implied warranty against latent defects can only be held to exist on the ground that it is presumed that he or his servants, for whom he is responsible, knew of the defect.   In White v. Miller, 71 N. Y. 118, 131, it is said:

"It was decided in Hoe v. Sanborn that upon a sale of a chattel by a manufacturer, a warranty is implied that the article sold is free from any latent defect growing out of the process of manufacture.   The rule is based on the presumed superior knowledge of the vendor, and there seems to be the same reason for implying a warranty on a sale of seeds by the grower."

In Randall v. Newson, L. R. 2 Q. B. Div. 102, the court held the manufacturer to be an absolute insurer against all latent defects, and liable for all damages caused by such defects; and this seems to be the holding of the court in Rodgers v. Niles, 11 Ohio St. 48.

We are of the opinion that such an extraordinary responsibility is not, by the principles of the law, imposed on the manufacturer.   The correct rule was applied in Bragg v. Morrill, 49 Vt. 45, and Archdale v. Moore, 19 Ill. 565 (approved in Kohl v. Lindley, 39 Ill. 195), where it is held that the manufacturer is only liable for failing to exercise the proper degree of care and skill in the selection of material, and in the manufacture of the same, and that he impliedly warrants that he has done this.

This disposes of the case, and the order and judgment appealed from are affirmed.