McDONALD *v.* ACME LUMBER CO.

1. SALES—WARRANTY—IMPLIED WARRANTY WHERE PURCHASED FOR PARTICULAR USE.

Where an article is purchased for a particular use made known to the seller, there is an implied warranty that the article is reasonably fit for the use for which it was purchased, but if the buyer orders a specific article, or a known described article, there is no warranty of fitness for purpose, although the manufacturer is informed of such purpose.

2. SAME.

Where defendant purchased kiln run brick, and inspected them before loading, there was no implied warranty that they were merchantable, especially where no claim is made that they were sold for a particular purpose, or that defendant relied upon any particular skill of plaintiff in manufacturing, furnishing, or selecting them.

Error to Wayne; Webster (Clyde I.), J.     Submitted October 6, 1921.     (Docket No. 46.)     Decided December 21, 1921.

Assumpsit by John C. McDonald against the Acme Lumber Company for goods sold and delivered.     Judgment for plaintiff on a directed verdict.     Defendant brings error.     Affirmed.

*Edmund E. Shepherd,* for appellant.

*John E. Moloney,* for appellee.

BIRD, J.     During the summer of 1919 plaintiff sold to defendant 60,000 kiln run brick at $14 a thousand. Defendant came to plaintiff's brick yard with its men and teams and hauled them away.     Later     in     the

On implied warranty of fitness of goods bought for a special purpose, see notes in 22 L. R. A. 189; 15 L. R. A. (N. S.) 855; 868, 884; 31 L. R. A. (N. S.) 783.

season, when plaintiff demanded payment therefor, defendant complained that the brick were not of a merchantable quality. Suit followed and plaintiff obtained a judgment by direction of the court for the price of the brick. Defendant contends that the trial court was in error in refusing to submit the case to the jury. It is argued by defendant that out of the sale of the brick there arose an implied contract that the brick were of a merchantable quality, and that when defendant discovered they were not merchantable it notified the plaintiff, and that it was a question of fact for the jury to say whether the notice was a reasonable one. Counsel says:

"In the case at bar defendant relied upon the implied warranty as to merchantable quality; it did not examine the brick upon delivery, and when it did discover the defect notified the plaintiff. Whether this notice was given within a reasonable time was a question of fact for the jury."

Under counsel's contention two questions arise: (*a*) Whether an implied warranty arose out of the contract, and (*b*), if it did, whether the right to insist upon it was waived by the conduct of defendant.

*a.* The plaintiff testified that he refused to sell hard brick to defendant's agents, and that he informed them that he had nothing but kiln run brick at his yard. We do not find this testimony disputed. Some attempt, however, is made to show that the number of soft brick were excessive, but otherwise there is little difference between them on the facts. The brick were delivered to defendant at plaintiff's kiln and subsequently they were laid up in walls of houses the defendant was building. In one or two cases defendant was compelled by the owners of the houses to take out the soft brick and substitute harder ones.

The rule appears to be that:

"Where the article is purchased for a particular use made known to the seller there is an implied warranty that the article is reasonably fit for the use for which it was purchased.   But if the buyer orders a specific article, or a known described article, there is no warranty of fitness for purpose, although the manufacturer is informed of such purpose.   *   *   *   So, where an article is of a general character and is not ordered specifically for a particular purpose there is no implied warranty that it will answer the purpose of the buyer."     35 Cyc. p. 402.

See, also, 24 R. C. L. p. 187; *Wisconsin Red Pressed-Brick Co.* v. *Hood,* 54 Minn. 543 (56 N. W. 165).

Measuring the contract of the parties by this rule we are unable to find any implied contract arising out of the sale.   These brick were purchased as a well known described article—"kiln run brick."   This quality included soft as well as hard brick, and the testimony shows that both have their uses in building.   Defendant was a builder and dealer and was using brick for various purposes.   If defendant did not get kiln run brick, that would probably have been a defense, had it not been waived by its conduct after the brick were delivered.   But that is another question.   The defense insisted on here is that there was an implied warranty that the brick were merchantable.   There is no claim made that the brick were sold for any particular place or for any particular purpose.   There is no claim made that defendant relied upon any particular skill of plaintiff in manufacturing, furnishing or selecting the brick, and it does appear that defendant had an opportunity to and did inspect them.   Its agents inspected them when they were loaded on to the wagons.   Defendant made no complaint and laid a large number of them in the walls it was building.   In one or two instances defendant was obliged to take them out and substitute harder ones where it had laid soft ones to the weather.   That

error of judgment was no fault of plaintiff's, and we do not think he can be held for it.   We think the trial court was correct in his conclusion that there were no questions to be submitted to the jury.   This view makes it unnecessary to discuss the other question.

The judgment is affirmed.

STEERE, C. J., and MOORE, WIEST, FELLOWS, STONE, CLARK, and SHARPE, JJ., concurred.