# CARL M. CARLSON v. CITY OF THIEF RIVER FALLS.[1]

January 30, 1925.

No. 24,321.

**Contractor's duty in preparing foundation of building.**

1. The plan of a building required, if "soft material" was encountered, that it be removed and a foundation wall placed on a specified concrete footing. There was thereby imposed upon plaintiff, the contractor, the obligation to excavate deep enough to procure a base of sufficient firmness to support the load to be imposed.

**Question for jury.**

2. The contractor not having guaranteed the work but having only to build as required by plans and specifications, it was a question for the jury whether he excavated and constructed the wall as required by the plan or, if he did not, whether he sought in due time and procured the approval of the engineer. If he did not do all that was required, and did not in due time procure the engineer's approval, he is liable for the resulting damage.

Action in the district court for Pennington county to recover $1,000 for work and material. The answer interposed a counterclaim for $2,000 for plaintiff's negligence. The case was tried before Grindeland, J., who granted plaintiff's motion for a directed verdict for amount claimed. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Reversed.

*H. O. Chommie,* for appellant.

*O. A. Naplin* and *Theodore Quale,* for respondent.

STONE, J.

Action by the contractor for the retained balance of the contract price of a filter plant building and motor house erected for defendant. After a directed verdict for plaintiff, defendant moved for a new trial and this appeal is from the order denying that motion.

[1]Reported in 201 N. W. 942.

The facts are simple and except as hereinafter noted not much in controversy. The building is situated on the bank of the Red Lake river and the grade line slopes from front to rear, the rear wall being some 30 feet from the water. The structure consists in the main of the filter, clear water and settling basins, over which is a one story superstructure. The clear water basin occupies the front and lower portion of the building. It rests upon a reinforced concrete slab placed flat upon the bottom of the excavation. To the rear and toward the river is the settling basin, about 35 feet long and 45 wide. It is 11 feet high inside and projects 13 feet 10 inches beyond the rear wall of the one story superstructure. The bottom is another reinforced concrete slab. The top and walls of the settling basin are also of reinforced concrete.

There were the usual contract, plans and specifications. Plaintiff did not guarantee the completed structure. He was obligated only to perform the labor and furnish the material necessary to complete the work pursuant to the plans and specifications. The engineer, it was agreed, was to supervise the work and "inspect the materials to be furnished and the work to be done under these specifications, and see that the same corresponds therewith". His decision as to the meaning of the plans or specifications "or any inconsistencies between them or as to the respective rights" of the parties was made binding. All materials were subject to his approval.

Notwithstanding the engineering supervision, the specifications imposed upon plaintiff responsibility for the entire work until its completion and acceptance, and provided that any imperfect or unfaithful work discovered at any time before final acceptance should be corrected on the requirement of the engineer. In that connection the specifications further provided:

"All loss or damage arising out of the nature of the work done under this agreement, or any unforeseen or unusual obstruction or difficulties which may be encountered in the prosecution of the same, or from any action of the elements, is to be sustained by the contractor."

The contractor shall give his personal attention to the faithful performance of the work."

One of the plan sheets shows a detailed cross section of the building. It indicates the dimensions and details, among other things, of the bottom slab and rear wall of the settling basin. The slab, 12 inches thick, was to be carried beyond the rear wall 4 inches so as to make a projecting shoulder 12 inches thick and 4 inches wide outside the outer face of the rear wall. Under the rear wall and this projection of the bottom slab, the plan indicates by dotted lines the possible need of running the wall itself downward to an extent then undetermined. There is appended, on the plan, a "note" showing that it was not then foreseen by the engineer, that he had not determined, how far this possible additional foundation wall would have to be carried. No soundings had been taken at this point by either contractor or engineer. The note reads: "In case of soft material under wall at south end, remove and construct wall on 1:3:6 concrete footing."

There is little doubt as to the meaning. If it were otherwise, the opinion of the engineer would be helpful, if not in fact controlling. His testimony is this:

"The dotted lines indicate that the degree or amount of soft material is uncertain and that the soft material shall be removed and a one-three-six mixture of concrete, which means one of cement, three of sand and six of rock shall be placed underneath and well constructed. Such note is necessary where we are not on continuous supervision; where we are not there every day a contractor under a contract and having full charge of the completion of the work is required to obtain a proper foundation under such conditions where we are not continually on the work."

The building was never formally accepted by defendant, but the contract price of almost $20,000 has been paid except for $1,000 retained, which is sought to be recovered by this action. The defense is a defect of construction claimed to have resulted from a breach of the contract, the alleged failure of plaintiff to comply with the "note", quoted just above. Although he did remove some

soft material at the point indicated, it is now said that plaintiff did not remove enough of it and did not carry the wall down far enough to give it a bottom of the requisite solidity. Shortly after the building was finished, the rear wall of the settling basin settled, causing serious cracks in the side walls between the clear water and settling basin, the existence and serious character of these cracks not being denied. The learned trial judge was correct in admonishing counsel that too much was said below, both in the pleadings and at the trial, concerning negligence. This is not a negligence case. It is one to recover upon a contract and the defense is a breach of the contract. The obligation imposed by the "note" was absolute and a failure to perform it would not be excusable, even though there was no negligence. Due care does not excuse a breach of contract which nevertheless remains a violation of legal duty and attended with resulting liability. So in this case, the first inquiry is whether plaintiff performed the obligation in question. It was, "in case soft material" under the wall at the point indicated to *remove* the same and construct the wall on the specified footing.

As a matter of fact, plaintiff encountered soft material where it was anticipated and removed some of it. It appears to have been "filled" ground. Whether he removed sufficient to comply with the note, and whether he constructed the wall as required are questions of fact. The note obviously required the removal of enough material and the carrying of the wall to a sufficient depth so that the footing would rest upon firm bottom—one that would carry the load. Not only was the excavation required, but the construction of the specified footing was also necessary. Here it is well to digress long enough to say that the additional excavation and concrete required by the note constituted extra work, to be paid for in addition to the contract price. It was so considered by the engineer.

Even though plaintiff did not comply with the requirement of additional excavation and concrete work, he is not liable as for breach of contract if he made a good faith effort to comply and his work at the point in question was approved at the time by defendant through the agency of its engineer or any other authorized representative. And that is where we are constrained to disagree

with the learned trial judge. The evidence made a jury question as to whether the engineer in fact approved of the work. True, all that plaintiff had to do was to comply with the contract, plans and specifications as reasonably interpreted and applied by the engineer. Friederick 'v. County of Redwood, 153 Minn. 451, 190 N. W. 801. It is not for us to pass upon the facts, but the record leaves a very serious doubt concerning plaintiff's performance of the work required by the plan, particularly the note, in case soft material was encountered at the point indicated. Soft material was encountered. Was the resulting obligation performed by plaintiff? That is a question and the first one for the jury, if the testimony leaves it in doubt.

But that is not all there is to the case, for plaintiff claims that, even if he did not carry his excavation through the "soft material," he did go to a depth inspected and approved by the engineer. If that question of fact is answered in the affirmative, it disposes of the case and plaintiff is entitled to recover. If it be answered in the negative, plaintiff could not recover without a showing that he in fact performed his obligation by removing the soft material to a depth sufficient to enable him to place the required footing on a firm bottom; and that he did so place the footing and did erect on it the required wall.

Soft material having been encountered, what was required is plain enough, except that there is no definition of the firm material that would have to be reached for the footing. It would have to be of a degree of solidity sufficient to furnish a proper base for the load it was to carry. The primary responsibility of determining the depth of excavation was on plaintiff and, if he assumed it, he must be held to a strict performance of his contractual duty. There is nothing in the argument that the depth (for the wall, not the whole basin), was not determined by the plan and that it might have been great. That in no way abates plaintiff's duty. But he cannot complain anyway for all the work below the bottom of the slab was "extra" and plaintiff is an unusual kind of a contractor, or at least the circumstances are unusual in some undisclosed way, if he did not welcome "extras" on a cost plus 15 per cent basis.

In such cases as this, contractors cannot complain if they proceed with undetermined matters of consequence without consulting the supervising engineer or architect. The responsibility can and ought to be placed on him by a demand for his professional determination. That is the contractor's privilege under the contract and if he does not avail himself of it, the whole responsibility is his. But if, with or without a demand therefor, the engineer inspects and approves the work, in the absence of concealment or fraud on the part of the contractor, the responsibility for the result is his, for the contractor is in no wise responsible for resulting defects if he has fulfilled the requirements of the engineer. Approval procured through fraud or collusion or in the face of circumstances showing the impossibility of honest or reasonable approval is of no benefit to the contractor. Chandler v. Wheeler (Tenn. Ch.), 49 S. W. 278.

The record presents an issue of fact as to whether the engineer did in fact approve plaintiff's work at the crucial point. Plaintiff and the engineer do not agree. A jury should decide the issue. But it is enough that the engineer—who was not in "continuous supervision"—happened to be on the work for one day while the trench was open. He had other things to inspect. It was for plaintiff to cause him to inspect the work now in issue. Maybe it was too far along to permit efficient inspection—it probably was if much concrete had been poured in the trench. This is one of the circumstances for the jury. If so much concrete had been poured that efficient inspection could not be made, or if for any other reason plaintiff did not cause a timely inspection to be made for the purpose of determining whether a bottom of sufficient firmness had been reached, he must answer for the resulting defect, for the crucial determination, in that case, was made by him and not by the engineer.

Again, if upon the occasion of the engineer's visit, plaintiff had commenced laying concrete in the trench, the engineer could well have concluded, nothing more appearing, that the plaintiff had himself decided that solid material had been reached, and no inspection would have been called for unless requested by plaintiff. Under such circumstances, without inspection *and* approval by the engineer,

the contractor cannot excuse noncompliance with plan, specifications or contract.

As to any detail with respect to which plaintiff went ahead on his own responsibility, it is immaterial whether the engineering supervision was "continuous" or "general." If in good faith he procured the approval of the engineer, plaintiff was relieved of further responsibility, even though he did not comply strictly with plans or specifications. In the absence of approval by the engineer, it was plaintiff's absolute duty to comply.

In view of another trial it is well to say that, in our opinion, it was error to exclude evidence that plaintiff assured the engineer that the ground at the bottom of the trench was solid. With respect to such a matter, a contractor may be as well qualified, and in many cases he may be better qualified, to judge than the engineer. In any event, with respect to such detail, the assurance of the contractor to the engineer relieves the latter, so far as the contractor is concerned, of the duty of inspection. Certainly, if the contractor gives such assurance and the engineer relying thereon refrains from inspection, the contractor is estopped from claiming any benefit of a lack of inspection or to allege that the work was approved. It was error also to exclude the offered proof that the soil under the wall in question was soft. Any competent proof to that effect should be admitted, whether it is the result of tests made recently or of the observation of witnesses of the work of excavation.

Because some point has been made on the pleadings, it is proper to observe that the complaint being in the form of the common count for work done and material furnished, a general denial would let in proof of failure of plaintiff to perform his contract. Farther than that, however, the answer does not go, at least with assurance and, if affirmative recovery is sought from plaintiff on the counterclaim, the charge of negligence which it now contains should be replaced, through amendment, if permitted, by proper averments of breach of contract and the resulting damage.

This is not a case of latent defect in material such as was involved in the much litigated case of Wisconsin Red Pressed Brick Co. v. Hood, 54 Minn. 543, 56 N. W. 165; 60 Minn. 401, 62 N. W. 550, 51

Am. St. 539; 67 Minn. 329, 69 N. W. 1091, 64 Am. St. 418. It is rather, on defendant's theory, a case of hidden defect due to breach of contract, for which recovery may be had beyond the retained portion of the contract price, provided only that defendant has done nothing to waive the breach.

Order reversed.