241 S.W.2d 23 (1951)
WHALEY et al.
v.
MILTON CONST. & SUPPLY CO.
No. 27976.
St. Louis Court of Appeals. Missouri.
June 19, 1951.
Motion for Rehearing or to Transfer to Denied July 6, 1951.
*25 R. Forder Buckley, St. Louis, for appellant.
Coburn, Storckman & Croft, Rexford H. Caruthers, and Edward E. Murphy, Jr., all of St. Louis, for respondents.
Motion for Rehearing or to Transfer to Supreme Court Denied July 6, 1951.
ANDERSON, Presiding Judge.
This is an action for damages for the breach of a building contract brought by Eugene B. Whaley and Amy M. Whaley, as plaintiffs, against the Milton Construction and Supply Company, a corporation, and Vorhof-Duenke Real Estate Company, a corporation, as defendants. At the close of the evidence plaintiffs dismissed as to defendant Vorhof-Duenke Real Estate Company. The trial below resulted in a verdict and judgment in favor of plaintiffs and against defendant Milton Construction and Supply Company in the sum of $1,275. From the judgment on this verdict said defendant appealed.
The petition upon which the case was tried alleged that on or about the 15th day of July, 1947, plaintiffs and defendants entered into a contract by the terms of which defendants agreed to sell, and plaintiffs agreed to purchase, for a consideration of $10,075, a five room brick bungalow, to be erected by defendants on the lot known and numbered as 1281 Hafner Place, University City, Missouri, "which bungalow, when completed, was to be in all material respects like a bungalow then in existence and located at 8310 Richards Street, University City, County of St. Louis, State of Missouri, and then used as a `display house.'" It was then alleged that plaintiffs had performed all conditions under the contract to be performed by them, but that defendants failed to perform the contract in that said bungalow, as erected pursuant to said contract, contained dissimilarities to the said bungalow on Richards Street. The petition then sets forth twenty specifications of alleged material differences between the bungalow as erected for plaintiffs and the said bungalow at 8310 Richards Street. Certain of these specifications were stricken from the petition by plaintiffs, and certain others were at the trial withdrawn from the jury's consideration by withdrawal instructions. There were nine specifications left on which the case was submitted. The prayer of the petition was for damages in the sum of $3,000.
The joint answer of the defendants was in the nature of a general denial and a plea of lack of consideration, and a further plea that the contract was void under the statute of frauds.
Plaintiff Eugene B. Whaley testified that in the summer of 1947, while driving in University City, he saw a sign which directed his attention to a display house located at 8310 Richards Street in University City. This house was constructed by defendant Milton Construction & Supply Company. Mr. Whaley inspected the house and, on the occasion, met a Mr. Waddle who was a salesman for said defendant. Mr. Waddle told Whaley that all the houses on Richards Street had been sold but that his company was building houses on Hafner Place. Whaley then inspected the site of the house on Hafner Place, which site he later purchased. The house was then in the process of construction. Mr. Whaley then returned to the place on Richards Street and conferred further with Mr. Waddle. Whaley testified: "I asked him (Waddle) about the construction of the house. He said the house would be built and there would be three F. H. A. inspections made while the house was under construction. * * * He told me that the house would be like the one on Richards that I was in, * * * and I gave him a check for fifty dollars, he gave me a receipt on a piece of yellow paper. The next day I went down to their office and met him and they signed an earnest money agreement. * * * it was the day following the date I talked to Mr. Waddle out at the place; it was the 15th of July, 1947." Whaley testified later with reference to the conversation which occurred *26 the day before the signing of the earnest money contract, as follows: "He told me that the house being built would be the same as the one I was in, * * * except the one on Hafner Place would be put on a six foot wider lot, which would cost $50 more. He told me that the house over on Richards Street was on a smaller lot and the one on Hafner Place will be on a fifty foot lot, and `you will have to pay $200 more for that.'"
On cross-examination of Whaley, the following appears:
"Q. I understood you when Mr. Croft was examining you and you said all the conditions in the house on Hafner would be similar to the Richards? A. Yes.
"Q. When you say `the same', you mean similar? A. That's the way I understand the two words."
When Mr. Whaley went to defendant's office on July 15, 1947, he met Mr. Waddle. At that time Mr. Waddle returned to Mr. Whaley the check for $50 and Whaley wrote and delivered to Waddle a check for $200. The earnest money contract had been prepared and was ready for signature when Whaley arrived. This earnest money contract was signed by Waddle, and by Elmer Vorhof, President of the Milton Construction & Supply Company. Whaley also signed it. The pertinent parts of this earnest money contract are as follows:
"Received of Eugene Bissel and Amy M. Whaley the sum of Two Hundred & no/100 Dollars as earnest money and part purchase money for a certain parcel of real property, lying in the County of St. Louis, State of Missouri, described as follows:
"Being a 5 room brick bungalow having a front of 50 feet on the West line of Hafner Place.
"Note: Purchaser is to Pay $35.00 Extra For Electric Stove Wiring Plus $27.50 Covering Tank of Oil and Alarm; This is to be Paid in Cash When Sale is Consummated; This is Part of This Contract.
"together with the improvements thereon known as and numbered 1281 Hafner, which property is this day sold to Eugene Bissel and Amy M. Whaley for the total sum of Ten Thousand Seventy Five & no/100 Dollars of which Two Hundred & no/100 Dollars to be paid in cash upon the date of closing this sale, of which earnest money is a part and the balance payable as follows:"
There then follows the terms of sale, time for delivery of possession, and the closing date of sale.
Whaley thereafter drove by the house during the course of its construction about every two weeks. On October 29, 1947, Whaley received a deed transferring the property at 1281 Hafner Place to Mr. and Mrs. Whaley. The purchase price was $10,075. The Whaleys moved into the premises about November 6, 1947.
A great deal of evidence, pro and con, was introduced by the parties as to whether there were dissimilarities between the house on Hafner Place and the Richards Street property. It will not be necessary to review all this evidence as that portion material to the issues on this appeal will be referred to in our discussion of appellant's complaints with reference to the instructions given and refused.
Appellant assigns as error the action of the trial court in overruling its motion for a directed verdict. In support of this contention it is urged that the description of the property contained in the earnest money contract was insufficient to satisfy the requirements of the statute of frauds. Said contract describes the property as "a certain parcel of real property, lying in the County of St. Louis, State of Missouri, described as follows: Being a 5 room brick bungalow having a front of 50 feet on the west line of Hafner Place, * * * together with the improvements thereon known as and numbered 1281 Hafner * * *." This is a sufficient description under the decisions. Herzog v. Ross, 355 Mo. 406, 196 S.W.2d 268, 167 A.L.R. 407; Henleben v. Krause, Mo.Sup., 209 S. W.2d 888. The point urged by appellant is without merit for another reason. The record shows that plaintiffs fully performed all of the terms of the contract imposed upon them. Such being the case, appellant is in no position to invoke the statute of frauds as a defense. Davis v. Holloway, *27 317 Mo. 246, 295 S.W. 105; Hart v. Riedel, Mo.App., 51 S.W.2d 891; Morris v. Mahn, 208 Mo.App. 575, 235 S.W. 827; Allison v. Cemetery Caretaking Co., 283 Mo. 424, 223 S.W. 41; McBride Realty Co. v. Grace, 223 Mo.App. 588, 15 S.W.2d 957.
It is next urged that the execution of the earnest money receipt was the final act of the parties expressing the terms of their agreement, and that all prior negotiations and agreements were merged therein, and for that reason the contract sued on could not be established without violating the parol evidence rule.
The rule referred to has no application to the facts in this case. The original contract between the parties was oral, and it does not appear that the execution of the earnest money receipt was intended as a reduction of that entire contract to writing. The purpose of the earnest money receipt was to bind the bargain, and its terms were limited to the terms of the sale. It contained nothing in relation to that part of the agreement that had to do with the construction of the house. Its purpose was merely to acknowledge receipt of the earnest money, identify the property to be conveyed, and specify the terms of the sale and the time and place of closing. Nor were the terms of the contract with reference to the character of the building to be constructed so related to the subject matter of the sale and conveyance of the property as to require, under the parol evidence, their inclusion in the earnest money contract before they could be enforced. Oral proof of the terms of the contract with respect to the kind of house contracted for in no way tended to vary, add to, or contradict the earnest money contract. Scott v. Asbury, Mo.App., 198 S.W. 1131; Corn v. McDowell, Mo.App., 185 S.W. 235; Bowers v. Bell, 193 Mo.App. 210, 182 S.W. 1068; Hart v. Riedel, Mo.App., 51 S.W.2d 891; Eggimann v. Houck, Mo.App., 240 S.W. 478; Meyer v. Dubinsky Realty Co., Mo. App., 133 S.W.2d 1106; Morris v. Mahn, 208 Mo.App. 575, 235 S.W. 827; Heath v. Beck, Mo.App., 231 S.W. 657.
Appellant further contends that by the use of the word "like" the parties had no intention of contracting for a house in all material respects identical to the one on Richards Street, but merely intended that the house to be built for plaintiffs would have the same or nearly the same appearance, quality and characteristics as the Richards Street house. It is then argued that since both houses were constructed under the approval of the F. H. A., and had the same floor plan, plaintiffs' house was "like" the Richards Street house and, for that reason, the court should have directed a verdict for defendant.
In determining the meaning of a contract, especially where there is a want of clearness in the language used, it is always permissible for the court to consider the situation of the parties and the accompanying circumstances at the time of the execution of the contract. 17 C.J.S., Contracts, § 321, p. 744; Restatement of the Law of Contracts, Section 235; St. Louis Union Trust Co. v. MacGovern & Co., 297 Mo. 527, 249 S.W. 68; North St. Louis Building & Loan Ass'n v. Obert, 169 Mo. 507, 69 S.W. 1044; Velvet Freeze, Inc., v. Milk Wagon Drivers' and Inside Dairy Employees' Union Local No. 603, Mo.App., 177 S.W.2d 644.
While it is true that the word "like" is often used in the sense contended for by appellant, it is frequently used in another sense as meaning that which is the "counterpart, an exact resemblance, a copy, an equal." See Webster's New International Dictionary (2nd Ed.).
From all the facts and circumstances surrounding the execution of the contract, we are convinced that the parties intended to contract for the erection of a house which would be in all material respects, a counterpart or copy of the house on Richards Streetnot only as to plan, but also as to kind and quality of material, and that the house would be built in a workmanlike manner.
Appellant next complains of the giving of plaintiffs' Instructions 1 and 2. Instruction No. 1 directed a verdict for the plaintiffs if the jury found that one or more of nine conditions existed in the Hafner Place house which were materially different from the conditions of the house on Richards *28 Street. Instruction No. 2 was on the measure of damages and charged the jury that if they found for plaintiffs they should assess plaintiffs' damages at such sum as they found from the evidence it would reasonably cost plaintiffs to have made their house similar to the Richards Street property. Appellant contends that these instructions were erroneous in that: (1) they did not conform to the pleadings; (2) did not conform to the proof; and (3) authorized the consideration of matters upon which there was no evidence. The record does not reveal that any objection was made at the trial to the giving of these instructions. Therefore, the matter is not properly before us for review. R.S.Mo. 1949, sec. 510.210; Supreme Court Rule 3.21; Lindsey v. Rogers, Mo.App., 220 S. W.2d 937; Holdman v. Thompson, 358 Mo. 577, 216 S.W.2d 72.
The court gave and read to the jury Instruction No. 5, which is as follows: "The Court instructs the jury that the plaintiffs are not entitled to recover upon that portion of their cause of action which relates to the alleged condition that the wood floor on the first floor is improperly finished and sanded; and the issue on that subject is withdrawn from the jury; and you will not consider the same in making up your verdict."
The matter withdrawn by the above instruction appears in the petition as subparagraph (g) of paragraph 7 and is as follows: "The wood floor on the first floor is improperly finished and sanded and poorly laid at various points."
Appellant's complaint with reference to Instruction No. 5 is that the court erred in declining to incorporate therein a withdrawal of that portion of sub-paragraph (g) which relates to the alleged condition of the floor as being "poorly laid at various points." We must rule against the point urged. The record fails to show any request for such modification of the instruction on the part of appellant.
There must be a request for an instruction to place on the court a duty of giving such instruction. Gilpin v. Aetna Life Ins. Co., 234 Mo.App. 566, 132 S.W. 2d 686. Furthermore, the giving of withdrawal instructions is discretionary with the court. Lach v. Buckner, 229 Mo.App. 1066, 86 S.W.2d 954. It is also the general rule that the refusal of a withdrawal instruction submitted by a defendant is harmless where plaintiff has not submitted the case on the ground sought to be withdrawn. Davis v. Buck's Stove & Range Co., 329 Mo. 1177, 49 S.W.2d 47; Yerger v. Smith, 338 Mo. 140, 89 S.W.2d 66; Scott v. Kansas City Public Service Co., Mo.App., 115 S. W.2d 518.
It is also urged that the court erred in not incorporating in Instruction No. 6 a withdrawal of that portion of plaintiffs' cause of action which related to the alleged pile of concrete on the storage room floor. Here again we find no request for such a charge. It also appears that there was sufficient evidence in the record to warrant submission of this matter to the jury.
There was, contrary to appellant's contention, no error in refusing to give and read to the jury Instructions B, D, and E for the reason that by said instructions defendant sought to withdraw from the jury's consideration the issues with respect to conditions relied upon by plaintiffs as a basis of recovery which were supported by ample evidence.
As to the complaint that the court erred in refusing to give Instruction C, it is sufficient to say that this was a matter resting within the trial court's discretion.
One item of damage for which recovery was sought was with reference to the condition of the floor. Plaintiffs' petition alleged that:
"(b) The main beam running down the center of the bungalow supported by three steel columns is not lined up correctly with the result that the center of the first floor is pushed up higher than the sides of the first floor.
"(c) There is a ridge running across the floor of the living room from north to south and another ridge running east and west roughly in the center of the bungalow."
The evidence shows that in the basement of the house there is an "I" beam supported *29 by three steel columns. This "I" beam runs lengthwise for the length of the house. The top of the steel beam running across the ceiling of the basement is higher than the outside supports for the wall, and this, according to plaintiffs' evidence, creates a slope in the first floor. From plaintiffs' evidence it appears that said structural condition was caused by the fact that the outside wall settled more than a foot, which settling took place before the house was completed. The evidence shows that in the floor of the front room of the house there is a ridge which runs north and south, and another ridge which runs east and west across the front of the house. According to plaintiffs' evidence the floor is badly out of level, which condition is visible to the naked eye; that while normal variations or change of elevation in a floor should not be over 1/16 of an inch in ten feet, there are places in the floor of the Hafner Place house where there is 7/16 of an inch difference in thirty inches. According to plaintiffs' evidence, to rectify this condition of the floor it would be necessary to shore up the "I" beam and cut off parts of the steel columns supporting said beam. The shores should then be taken away and the "I" beam lowered. In this way the floor would be leveled. The cost of such an operation would be $700 to $800.
The defendant offered evidence that the condition of the floors was due to the crowning of two joists and not to the causes testified to by plaintiffs' witnesses. Mr. Duenke testified that one of the crowned joists was under the living room, not far from its center and about nine feet west of the east wall, and the other was under the dining room, about eighteen inches from the right hand partition of the dining room. Mr. Duenke further testified that these joists were made of number one grade lumber and were bought from the County Lumber and Supply Company. He further testified the condition did not exist at the time the house was completed, and that a builder or carpenter could not tell from an examination of the joists as to whether or not they would thereafter crown or warp.
Appellant requested the court to give Instruction A, which request was denied. This action of the court appellant contends was error. Said Instruction A is as follows: "The court instructs the jury that while it is the duty of a builder to perform his work in a workmanlike manner, that is, as a skilled workman should do it, he is bound to exercise only ordinary care and skill. The Court instructs you, therefore, that if you find and believe from the evidence that the defendant Milton Construction and Supply Company procured the joists in question from a reputable dealer, and if you further find and believe that the condition of the first floor in plaintiffs' property mentioned in the evidence is a result of crowning of said joists, and if you further find and believe from the evidence that said crowning resulted from latent defects in said joists which could not have been discovered by said defendant by inspection before the same were installed, then you shall find in favor of said defendant and against the plaintiffs on that portion of plaintiffs' cause of action which relates to the alleged ridge running across the floor of the living room from north to south and another ridge running east and west, roughly in the center of the bungalow."
In our opinion, the court erred in refusing to give the foregoing instruction. Defendant produced evidence from which the jury could reasonably find that the plaintiffs' damage was caused by a latent defect in the joists, which defect was unknown to defendant and not discoverable by the exercise of ordinary care. There was no express warranty by the defendant against latent defects in the material to be used in the building in question and, under the authorities, none can be implied.
The law governing here is found in the case of Flannery v. St. Louis Architectural Iron Co., 194 Mo.App. 555, 185 S.W. 760. In that case plaintiff was a contractor employed by one Grace to build a garage. Plaintiff purchased of defendant four steel rods to be used as trusses to support the roof of the garage. The rods were ordered at specified lengths and, to supply them, it *30 was essential that several shorter rods should be welded together. When furnished to plaintiffs these rods appeared to be sufficient. Plaintiff inspected the rods with due care and installed them in trusses to carry the weight of the building. Several months later the roof of the garage collapsed under the weight of snow accumulated thereon. On inspection, it was found that two of the rods contained a latent defect in the weld and that they had separated at the point of the weld in each. All the witnesses testified that the two rods were defectively welded and that the defect was a latent one, not discoverable by the exercise of ordinary care on the part of either the plaintiff or defendant. Although plaintiff was under no contract obligation to do so, he reconstructed the roof for Grace, and this action was for his expense in so doing. Held, that plaintiff was not entitled to recover. The court held that defendant was not liable unless an enforceable right accrued to Grace against plaintiff by reason of the fall of the roof. The court then, after reviewing the evidence, said: 185 S.W. loc. cit. 761
"`It is the duty of the builder to perform his work in a workmanlike manner; that is, the work should be done as a skilled workman would do it; the law exacting from a builder ordinary care and skill only.' 6 Cyc. 59.
"It is certain that the builder is not an insurer. Nor is he required to respond to the owner on account of defective construction, except in accordance with the precepts of ordinary care, unless the obligation is affixed upon him through a special contract to do so. Here it is conceded there was no special contract requiring plaintiff to mend the roof in any event or make good any other part of the building which should fail because of latent defects in material not discoverable through exercising ordinary care to that end. Of course, there is no absolute warranty implied by law against the builder, for the measure of his duty, as above stated, is to be ascertained by reference to the standard of ordinary care and skill in the circumstances which beset the particular situation. Had plaintiff manufactured the iron rods himself, it may be he would be liable to respond to Grace for the latent defect in the weld because of the failure of his servants to exercise ordinary care thereabout. But he purchased them from defendant, a reputable dealer, and installed them in good faith, after inspection, without knowledge of the latent defect. It is conceded he exercised ordinary care in the premises, and, such being true, no enforceable obligation against him appears after the completion and the acceptance of the building."
Wisconsin Red Pressed Brick Co. v. Hood, 67 Minn. 329, 69 N.W. 1091, was a suit for the purchase price of brick sold by plaintiff to Hood, a contractor, and for a mechanic's lien on a building of the Hurd Refrigerator Company. The brick were used by Hood in the construction of a building for the Hurd Refrigerator Company. The case was tried to the court. The court found that about 80,000 of the brick contained a latent defect, known to plaintiff, which caused them to disintegrate and crumble upon their exposed surfaces, which defect was not visible or known to Hood or the Hurd Refrigerator Company, nor could such defect have been discovered by the use of ordinary means, but could only be determined and developed by exposure in the walls. There was a verdict and judgment for plaintiff. On appeal, Hurd Refrigerator Company contended that it was entitled to recoup its damages against Hood, the contractor. This contention was denied. The court said: 69 N.W. loc. cit. 1093 "But appellant contends that Hood is responsible to it for the latent defect in the bricks, and that it is entitled to recoup against him the amount of damage to the buildings caused by such defect. We cannot agree with appellant. Undoubtedly, if Hood had manufactured the brick himself, he would then, so to speak, be manufacturer of both the brick and the buildings, and would be liable for the damage to the buildings caused by such latent defect in the brick. But Hood did not manufacture the brick, had no knowledge of the defect in them, acted in good faith, and exercised reasonable care and skill. No amount of care and skill would have discovered the defect, and his contract was completed, and *31 the building accepted by the refrigerator company, before the defect was discovered. Even though an article is furnished for a particular use, if the vendor is not the grower or manufacturer, there is, as a general rule, no implied warranty against latent defects. The vendor of provisions for immediate consumption is generally held to be an exception to this rule, and it has sometimes been made a question whether the vendor of seed is not also such an exception. Caveat emptor is the general rule."
In Bragg v. Morrill, 49 Vt. 45, 24 Am. Rep. 102, it appears that plaintiff was a carriage manufacturer and defendant ran a foundry and machine shop. Plaintiff purchased from defendant a wrought iron shaft, 24 feet in diameter, which he installed in his plant and to which he attached pulleys for the propulsion of machines used in the business. Defendant did not manufacture the shaft, and had nothing to do with the hanging of the shaft. The only work defendant did on the shaft was to turn it the whole length so that plaintiff could attach pulleys to it at any point he chose. There was no express warranty nor undertaking by the defendant in regard to the shaft. It developed that there were two defects in the shaftone an imperfect weld, and the other a flaw. These defects were alike unknown to the defendant and to the plaintiff, and were not discoverable by any ordinary inspection or examination. Plaintiff sued for damages sustained by him on account of these defects. Held, that plaintiff was not entitled to recover. The court, after reviewing authorities, said: 49 Vt. loc. cit. 47, 48 "We think the result of the cases on implied warranty is, that the vendor of an article for a particular purpose does not impliedly warrant it against latent defects unknown to him, and which have been produced through the unskillfulness of some previous manufacturer or owner, without his knowledge or fault, except in those cases where the sale of the article by him is, in and of itself, legally equivalent to a positive affirmation that the article has certain inherent qualities inconsistent with the claimed defects, as is the case of the sale of provisions for domestic use. On this ground, the defendant is not liable on an implied warranty of the shaft for the latent defects that caused it to break, and were wholly unknown to him, and were not produced through any fault or unskillfulness on his part, but wholly through the fault or unskillfulness of the manufacturer of the shaft from the raw material."
Other cases in point are: McKinnon Mfg. Co. v. Alpena Fish Co., 102 Mich. 221, 60 N.W. 472; and Archdale v. Moore, 19 111. 565.
The judgment appealed from is reversed and the cause remanded.
McCULLEN and BENNICK, JJ., concur.